In the Matter of **LOS ANGELES LAND AND INVESTMENTS, LTD., a Corporation, Debtor.**

No. BK 67–352.

United States District Court
D.Hawaii.

Feb. 21, 1968.

William F. Thompson, III, Honolulu, Hawaii, for James R. Light and Los Angeles Land and Investments, Ltd.

Ralph S. Aoki, Trustee of L. A. Land & Inv., Honolulu, Hawaii, H. William Burgess, Honolulu, Hawaii, for trustee.

Arthur E. Pennekamp, W. Stevens Tucker, C. J. Odenweller, Jr., Allen F. Corotto, San Francisco, Cal., by C. J. Odenweller, Jr., San Francisco, Cal., One of the Counsel for the Securities and Exchange Commission.

## DECISION

TAVARES, District Judge.

This matter involves a corporate reorganization proceeding under Chapter X of the Bankruptcy Act (11 U.S.C.A. Sec. 501 et seq.). The issue presented concerns the proper classification of the creditors and stockholders of the debtor company pursuant to Section 197 of the Bankruptcy Act, 11 U.S.C.A. Sec. 597.

Los Angeles Land and Investments, Ltd., debtor herein, was created under the laws of the State of Hawaii for the purpose of purchasing, selling and developing land in the Antelope Valley of Los Angeles County, California. It was promoted by James R. Light and Laura C. Light who together own all of the issued and outstanding shares of common stock of the debtor.

The principal acquisitions of land consist of two tracts. One, commonly known as portions of Sections 10 and 15, consists of approximately 200 acres. The second, commonly known as Section 27, consists of approximately 620 acres. The first tract was acquired on July 26, 1964, for $38,000.00 with a down payment of

approximately $9,000.00 and assumption of mortgage liabilities of approximately $29,000.00. The second tract was acquired in quarter sections, the first on October 19, 1964, and the remaining quarters on February 26, 1965. It was acquired for an aggregate price of $186,000.00 with down payments of approximately $46,500.00 and assumption of approximately $139,490.00 for mortgage obligations on the tracts.

The debtor commenced selling, under California Real Estate Association Standard Form Agreements of Sale parcels consisting of 2½ acres undivided interests in either the first tract or a quarter section of the second tract. The parcels were sold from a "grid" since no tract or plat map had at that time either been approved or recorded. The contracts were initially offered for $2990.00 each with a down payment of $690.00 and the balance payable in monthly installments over approximately a 100-month period. Subsequently the contract purchase prices were increased in stages to a final price of $5990.00 with a down payment of $990.00 and the balance payable monthly over approximately a 100-month period. The increases in price were made without any appreciable changes in the land values to justify the change. The mark-up over cost ranged from five times to twelve times the purchase price.

Subsequently the debtor offered for exchange and did exchange with a large majority of the original contract holder "investors" the original standard form contract for a new contract which contained additional provisions which granted to the debtor the sole and exclusive right to manage, subdivide, encumber and sell the parcels purchased by the investors and after deducting all costs and expenses and a commission, to distribute the balance, if any, pro rata amongst the investors. The new contract form also: 1. omitted the provision which entitled the purchaser to a deed for his "parcel" upon payment in full, and 2. obligated the purchaser to pay a pro rata share or additional development expenses.

The State of California issued a Desist and Refrain Order and the State of Hawaii issued a warning letter concerning the selling of further contracts.

The Securities and Exchange Commission instituted a proceeding in this Court (Securities and Exchange Commission v. Los Angeles Land and Investments, Ltd., et al., Civil Action No. 2486) to enjoin further sales. A Permanent Injunction by consent was entered on February 17, 1966, which incorporated by reference a stipulation between the parties permitting the debtor to continue to collect the monthly installments from the investors and to use same "only for the purpose of benefitting the interests of the investors," to satisfy existing mortgages and other reasonable expenses to carry out the terms of the existing contract.

When the Commission discovered that the stipulation, in several respects, was not being complied with, it moved to modify the Permanent Injunction by deleting reference to the stipulation and also moved for the appointment of a receiver. The several mortgages on the property had to be serviced regularly from the monthly installment payments of the investors which the stipulation had permitted the debtor to continue to collect. However, when the Permanent Injunction was modified the debtor could not continue this practice because each monthly payment under the installment contract would constitute a further sale in violation of the Securities Act of 1933 since the sale of a security is not completed until the purchase price has been paid in full. United States v. Kormel, Inc., D.C.Nev., 230 F.Supp. 275; United States v. Robertson, D.C., S.D.N.Y., 181 F.Supp. 158, 162. The debtor in lieu of having a receiver appointed, to fill the void and protect the investors, agreed to file a voluntary petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. Sec. 501 et seq. The petition, filed on October 24, 1967, was approved and a trustee appointed.

A number of the investors stopped making their monthly payments under

the contracts. Some were returned the monies which they had paid while others received nothing. The debtor did not at any time exercise the right to terminate the contract in the event of default and retain the payments as liquidated damages.

■ A Chapter X proceeding is designed to rehabilitate an embarrassed corporation and, when necessary, to recast its capital structure in order to eliminate financial problems which have caused or may in the immediate future cause the debtor to become a "corporate cripple." This objective is accomplished through the plan of reorganization wherein rights and interests of the creditors and stockholders are modified or changed to obtain the desired objective. One of the functions of the independent trustee is to file the plan of reorganization. Section 169 of the Bankruptcy Act, 11 U.S.C.A. Sec. 569.

An important step "for the purpose of the plan" which must be taken is for the judge to classify the creditors and stockholders "according to the nature of their respective claims or stock." Bankruptcy Act, Section 197, 11 U.S.C.A. Sec. 597; In the Matter of Philadelphia Rapid Transit Co., E.D.Pa. (1935) 11 F.Supp. 865.

It does not appear that there are any classification problems pertaining to the creditors having priority or security or to the stockholders. There is, however, a question involving the class of general unsecured creditors. In resolving the question of who should be included, there must be a determination as to the creditor status, if any, of those persons who purchased the contracts or investment contracts from the debtor.

The debtor, beginning in October, 1964, sold parcels of real estate in its two tracts to approximately 200 persons, practically all of whom resided in the States of Hawaii or California. At no time did the debtor comply with the requirements of the California Administrative Code, Title 10, Sections 11010 and 11018 by notifying the Real Estate Commissioner of its intention to sell or furnishing a copy of a public report of the Commissioner to prospective purchasers prior to the execution of the contract, nor did the debtor comply with the Revised Laws of Hawaii, 1955, as amended, Title 22, Chapter 170, Section 170–33, which required sales in subdivided properties to be registered with the Commissioner and enter into binding contracts only after "all subdivision map requirements, zoning laws, * * * have been met." No registration with either Commission had been made, no public report procured and no subdivision map had been approved or recorded.

■ Where contracts for sale of real estate in California or Hawaii are not in compliance with the respective laws, the contracts are regarded as void or voidable and the investors may recover all payments made, including interest. Revised Laws of Hawaii, 1955, as amended, Title 22, Chapter 170, Section 170–37; California Administrative Code, Title 10, Section 11018.1; Murphy v. San Gabriel Mfg. Co., 99 Cal.App.2d 365, 222 P.2d 85.

■ The second contract which was exchanged with the investors was a security as defined in the Securities Act of 1933, 15 U.S.C.A. Section 77a et seq. It was an investment contract or a certificate of interest and participation in a profit sharing agreement since it consisted of agreements by the debtor to sell to the investors fractional undivided interests in certain lands on the terms and conditions, the net effect thereof, in the language of the agreement, being an immediate sale of an undivided interest in land with immediate subsequent agreement wherein the company as agent for buyer manages and undertakes on buyer's behalf the subdividing and sale of the subdivided lots. Securities and Exchange Commission v. W. J. Howey & Company, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943).

█ The debtor in the sale of the investment contracts misrepresented that the authority of the State of California and the State of Hawaii had approved the project and had "given it their blessing"; the proximity of the site to a shopping center, schools and other developed areas; the availability of potable water at the site; that neighboring properties were being sold for substantially more than the contract sales prices and made other misrepresentations. The debtor also neglected or omitted to make material disclosure to the investors which resulted in making misleading other statements as to cost of the properties; the market value of the properties at the time of the transaction; the commissions which were being paid to agents and the estimated cost to complete the subdivision and develop the lots for sale. Securities sold in the aforementioned manner create a liability of the debtor to the investors "who may sue either at law or at equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received." Securities and Exchange Act, Section 12(2), 15 U.S.C.A. Sec. 77l(2)—see Loss, Securities Regulation, Vol. III, Pgs. 1626—1631.

█ Therefore, since all of the contracts sold by the debtor were in violation of the laws of the States of Hawaii and California, as well as the Federal laws, pursuant to each of which the purchaser is accorded a cause of action against the seller for the recovery of his payments plus interest, each and every investor who holds contracts and/or investment contracts of the debtor is a contingent creditor of the debtor. A person who has a valid cause of action or a legal right to damages capable of enforcement by judicial process, until he has reduced his claim for damages to judgment, is a contingent creditor. The claim is provable although the contingency was not exercised until after the filing of the petition. Merwine v. Mt. Pocono Light & Improvement Co., 304 Pa. 517, 156 A. 150, 151; Guaranty Trust Company of New York v. Henwood, 8 Cir., 86 F.2d 347.

Chapter X recognizes the necessity of recognizing claims which might not otherwise be provable in bankruptcy, and the term "claim" has been defined in Section 106(1) of the Bankruptcy Act, 11 U.S.C.A. Sec. 506(1), as follows: " 'claims' shall include all claims of whatever character against the debtor or its property, except stock, whether or not such claims are provable under section 63 of this Act or whether secured or unsecured, liquidated or *unliquidated*, fixed or *contingent*." (emphasis added)

█ In keeping with the fundamental purpose of effecting a rehabilitation of a financially embarrassed corporation by the reorganization of its creditor obligations and shareholders' interest it is essential to discharge all demands of whatever sort, executory and contingent, presently due or to mature in the future. City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 438–439, 57 S.Ct. 292, 81 L.Ed. 324 (1937); In re Plankinton Bldg. Co., C.A. 7th (1943) 135 F.2d 273. Unless all claims are treated in the plan preferences will result. Hippodrome Bldg. Co. v. Irving Trust Co., C.A. 2nd (1947) 91 F.2d 753.

The resolving and liquidating of contingent claims of creditors become essential in a Chapter X proceeding because the Bankruptcy Act provides that when the plan is consummated, a final decree shall be entered "discharging the debtor from all its debts and liabilities and terminating all rights and interest of the stockholders of the debtor, except as provided in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of property." Bankruptcy Act, Section 228(1), 11 U.S.C.A., Sec. 628(1). "It has been said that a satisfactory reorganization would be nearly impossible without proper recognition and disposition of contingent and unliquidated claims." Collier on Bankruptcy, Vol. 6A, Section 9.06, Pg. 168. This is particularly true, as here, where, the right of the contingent creditor, if permitted to survive, would enable

him to destroy the reorganized company by asserting his action later and forcing the real property to be sold to satisfy his judgment. The few who acted would be satisfied at the expense of the others who would receive nothing. A plan with a built in preference of some over others is abhorred by a Court of Bankruptcy.

■ It is, therefore, imperative that all claims of a contingent nature be liquidated by the best means available at the time, and the judge in such circumstances has, in his discretion, the power and authority to order the manner of their liquidation. Hippodrome Bldg. Co. v. Irving Trust Co., supra; In re Missouri Gas and Electric Service Co., W.D.Mo. (1935) 11 F.Supp. 434; Larkin v. Munson Steamship Lines, C.A. 2nd (1938) 100 F.2d 393. As stated in Collier on Bankruptcy, Vol. 6A, Sec. 9.06, Pg. 173: "The manner of allowance of contingent and unliquidated claims lies in the discretion of the judge in view of section 196. Contingent claims or claims not presently due may be discounted to present worth or if that is impossible, must be provided for in the plan on a basis consistent with treatment of other claims of their class. Claims which are unliquidated or susceptible of liquidation may be determined in the manner best fitted to the circumstances."

■ There now remains the question of the methodology to be used in the liquidation of the contingent claims of all of the investors. The statutory provisions and law hereinabove referred to accord to the investors of void or voidable contracts and/or investment contracts the right to the recovery of all of their payments with interest and this approach appears best fitted to this proceeding. Claims of these creditors should be allowed, for plan purposes, in the aggregate amount of the initial payment and all the subsequent installments with interest thereon at the rate of 6% per annum.

■ The trustee upon his appointment urged the investors to continue making their monthly installment payments to him in order to pay the taxes and mortgage payments to keep these secured or priority creditors current. He has been receiving monies regularly from most of the investors. The claims of these investors which have been classified above as unsecured is limited to payments made prior to the filing of the petition. All payments made to the trustee after his appointment are in the nature of administrative claims being funds advanced or loaned to the trustee for operational purposes. These payments must be treated in the plan of reorganization pursuant to Section 216(3) of the Bankruptcy Act, 11 U.S.C.A. Sec. 616(3).

Having determined the status of the investors in the contracts of the debtor to be that of a creditor to the extent of the payments prior to this proceeding plus interest, it now becomes necessary to determine the manner in which this unsecured claim should be classified. The Act requires the classification to be in accordance with the "nature" of the claim and in this determination it is necessary that the judge have discretionary powers. "It is obvious from this language [of the statute] that Congress intended to give the court a broad latitude in the classification of debtors. Such classification, of course, should not do substantial violence to any claimant's interest, nor should it uselessly increase the number of classifications unless there be substantial differences in the nature of the claims." In the Matter of Palisades-on-the Desplaines, C.A. 7th (1937) 89 F.2d 214, 217.

■ The test to be applied appears to be one directed toward a determination of the "nature" of the claim. This would encompass an analysis of the legal character or the quality of the claim as it relates to the assets of the debtor. Basically, it is simply a method of recognizing the rights of creditors which call for difference in treatment. Generally, however, "All creditors of equal rank with claims against the same property should be placed in the same class." In re Scherk v. Newton, C.A. 10th (1945) 152 F.2d 747.

The courts recognize that the word "nature" is used in no technical sense in law but is used in its ordinary common vernacular, wherein it means kind, sort, species or character. Where the differences are in the rates of interest, in the amounts, in the dates of maturity, in names of payees, the manner in which the claim arose and such other minor details, they cannot affect the "nature," i. e., the kind of claim, otherwise a separate class would have to be provided for nearly every type of situation which would be an unthinkable calamity when the object and aim of the statute is regarded. In re Missouri Pacific Railway Co., E.D. Mo. (1935) CCH Bankr.Serv. Section 3780.

 Unsecured creditors may, under special circumstances, be divided into separate classes where the legal character of their claims is such as to accord them a status different from the other unsecured creditors, i. e., claims within the "six-month rule" or tax claims. Dudley v. Mealey, C.A.2d (1945), 147 F.2d 268 (application of six-month rule to hotel restaurant); In the Matter of Sixty-Seven Wall Street Restaurant Company, S.D. New York (1938), 23 F.Supp. 672 (Payroll Contribution Unemployment Compensation Law).

It is well summarized in Collier on Bankruptcy, Vol. 6A, Section 9.13(1), Pg. 238, as follows: "The fact that [unsecured] claims may take various forms— as for example, notes, accounts, written contracts, torts or the like—would not ordinarily compel separate classification since an unsecured indebtedness or liability is the common denominator of all." See also In re Reorganization of Pittsburgh Rys. Co., C.A. 3rd (1940), 111 F.2d 932.

 The general unsecured creditor classification recommended by the trustee in his petition, which he believes to be fair, included "holders of promissory notes which are unsecured, open account creditors for services rendered or materials delivered, and holders of contracts for sale of real estate and/or investment contracts to the extent of payment made plus interest thereon prior to the date of filing of the petition" as a single class of general unsecured creditors. These categories of unsecured claims are of the same kind, sort or character, the "nature" varies in only minor details concerning primarily the manner in which they arose. The class in its entirety has the basic "nature" of all of them being the holder of an unsecured indebtedness or liability which factor is "the common denominator of all". There does not appear to be any justification to fragment the classification and uselessly increase their number where there is no substantial differentiation in the "nature" of their claims to justify such a decision.

This conclusion is in accord with the doctrine that statutes should "receive a sensible construction, such as will effectuate the legislative intention." Re Chapman Petr., 166 U.S. 661, 667, 17 S. Ct. 677, 680, 41 L.Ed. 1154, and Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 555, 35 S.Ct. 289, 59 L.Ed. 713. The classification as suggested by the trustee is proper and is approved solely for plan purposes.

The relief prayed for by the trustee will be granted and an order may be presented in accordance with this decision.