[Civ. No. 44634. Second Dist., Div. Five. May 2, 1975.]

FEDERATED MORTGAGE INVESTORS, Plaintiff and Appellant, v.
AMERICAN SAVINGS AND LOAN ASSOCIATION
OF CALIFORNIA, Defendant and Respondent.

Ziffren & Ziffren, Alef & Schnitzer and Martin J. Schnitzer for Plaintiff and Appellant.

Hahn, Cazier, Hoegh & Leff and Julian A. Pollok for Defendant and Respondent.

**OPINION**

**LORING, J.***—Federated Mortgage Investors, a business trust (Federated) filed an action against American Savings and Loan Association of

*Assigned by the Chairman of the Judicial Council.

California, a California corporation (American) to recover $31,895[1] with interest an accounting and for exemplary damages. After nonjury trial the court made findings in favor of American and denied relief to Federated. Judgment was entered accordingly. Federated appeals from the judgment.

## FACTS

Federated's claim for $31,895 arises out of a complex state of facts which were established by oral testimony and a written stipulation which incorporated various documents. The facts relevant to the issues involved herein may be briefly summarized as follows:

Eichler Corporation (Eichler) built a building—Central Towers—in San Francisco. A portion of the costs of construction ($4.2 million) was supplied by American who acquired a first trust deed dated October 21, 1963, recorded October 28, 1963. This trust deed gave American the right, inter alia, to receive rents, issues, and profits as additional security. In April of 1965 Federated's predecessor (Kirkeby-Natus) loaned Eichler $1.8 million and acquired a second trust deed (recorded Apr. 9, 1965) which was subordinate to American's first trust deed. Eichler defaulted. Federated gave notice of default and election to sell on August 29, 1966. American gave notice of default and election to sell on September 8, 1966.[2] In January 1967, Eichler filed in bankruptcy and the bankruptcy count enjoined foreclosure by American and Federated. The bankruptcy court allowed Eichler to remain in possession but ordered him to pay all rents to American and American was ordered to pay operating expenses and apply the remaining balance to its first trust deed. In May 1967, the bankruptcy court removed Eichler and substituted Coldwell Banker as manager as agent for American. Coldwell Banker managed the property, turning rents, issues and profits over to American after deducting operating expenses. Those funds which Coldwell Banker collected disbursed and remitted to American included security deposits made by tenants, all or some portion of which might be repayable to the tenants at the end of their leases depending on whether or not the tenants were guilty of any breach and if so, the amount thereof. It is the disposition of these security deposits which is the gravamen of this action. Federated claims that they amount to $31,895 and that American is obligated to pay Federated that sum. American denies that the correct sum of the security

---

[1]The theory of the cause of action for recovery of the $31,895 will be discussed in connection with the statement of facts, *infra.*

[2]American's notice was first in time.

deposits is $31,895 but irrespective of the amount American denies that it is obligated to pay Federated any sum whatsoever for reasons hereinafter stated.

On November 7, 1968, American and Federated entered into a letter agreement (Exhibit L) under which the parties agreed that Federated could foreclose its second trust deed, sell the property, pay off the first trust deed and American would make a new loan for $4,275,000. The key paragraph (7) of that agreement read:

"7. Concurrently with the making of said loan, we[3] are to be paid off in cash the total amount of the indebtedness under our existing loan on said property, including all court costs, attorneys' fees and trustees' fees incurred by us, provided that the aggregate amount of the payments to us, including impounds, loan fee, as well as the items listed in this paragraph, shall not exceed the amount of our new loan by more than $325,000.00." On November 8, 1968, the bankruptcy court vacated its order staying foreclosure and on December 4, 1968, Federated pursuant to the written letter agreement with American proceeded to foreclose its second trust deed subject, of course, to American's first trust deed. Pursuant to that letter agreement, American abstained from foreclosing its first trust deed. Federated received a trustees' deed, evidencing the transfer of record title from Eichler to Federated. On November 15, 1968, Federated agreed to sell the building to Canuela Ranch Company, which assigned its rights to Central Towers, a partnership. An escrow was opened at First American Title Company of Marin (escrow company) between Federated as seller and Central Towers as buyer. The escrow company requested American to supply information regarding the security deposits which it had obtained from the tenants. American supplied the requested information. American filed a demand in escrow under paragraph (7) of Exhibit L for $319,709.53. Central Towers demanded that the escrow company collect for its account the security deposits and that they be deposited into escrow, but when American notified Central Towers that it had applied such deposits to reduce its claim and that the buyer, Central Towers, "will be obligated to make such refunds of the deposits as may become due to tenants from time to time," Central Towers returned a copy of the letter marked "agreed." However, Central Towers did not modify its escrow instructions demanding the deposit in escrow of the security deposits. Federated, in order to avoid a loss of the sale on the last day, deposited $21,945.78 into

---

[3] "We" refers to American.

escrow and sent American a letter that it was doing so without prejudice to its rights. This action followed.

## CONTENTIONS

Appellant contends:

I American received the security deposits from the tenants as security for the performance of the leases and it held those deposits as trustee for the tenants.

II There was no evidence to support the court's finding that the bankruptcy court authorized American to apply the security deposits against its loan.

III As owner of the property by foreclosure, Federated was entitled to receive and hold the security deposits.

IV Federated is entitled on equitable principles to reimbursement from American for the funds which Federated paid to its buyer (Central Towers) and which were ultimately used to satisfy American's obligation to the tenants.

V American was guilty of conversion for which it should be required to pay both actual and punitive damages.

VI American was guilty of breach of the agreement with Federated.

## DISCUSSION

■ An appropriate point at which to start to unravel this complex problem is Federated's assumption that American (standing in the shoes of Eichler, either by virtue of the terms of its first trust deed or by virtue of the orders of the bankruptcy court) was in possession of trust funds. The form of deposit receipt given to tenants is set forth in the margin.[4] In

---

[4]The form of deposit receipt reads as follows:

"Lessee has, contemporaneously with the execution of his lease, deposited with Lessor the sum of _____ receipt of which is hereby acknowledged by Lessor. Said sum shall be held by Lessor as security for the faithful performance by Lessee of all of the terms, covenants, and conditions of said lease by said Lessee to be kept and performed during the term hereof. If at any time during the term of this lease any of the rent herein reserved shall be overdue and unpaid, or any other sum payable by Lessee hereunder shall be overdue and unpaid, then Lessor may, at the option of Lessor (but Lessor shall not be required to) appropriate and apply any portion of said $_____ to the payment of

our view, that document creates a debtor/creditor relationship, not a trust relationship. Civil Code section 2221.[5] In order to create a trust there must be a specific res. It has been stated: "A promise by a debtor to hold the amount owed by him in trust creates no trust, since there is no property right in the debtor that can be the subject of a trust, and the obligor cannot be a trustee of duties owed by himself. Hence the debtor cannot convert his debt into a trust unless he has in his possession and sets aside a fund for that purpose." (48 Cal.Jur.2d 666.)

Absent evidence that American created a trust fund of the monies which it received from the tenants or that it was obligated to do so, no trust arose. (*Molera v. Cooper,* 173 Cal. 259 [160 P. 231]; *Smith v. Bliss,* 44 Cal.App.2d 171, 176 [112 P.2d 30]; *Ilse v. Burgess,* 28 Cal.App.2d 654 [83 P.2d 527].) There was no such evidence here. As we view it, Federated's trust argument is a "strawman" argument. The obligation of American to the tenants was a personal obligation whether it arose out of a trust duty or a debtor/creditor relationship. Federated could no more succeed to American's trust duties, if any, than it could to an obligation arising out of a debtor/creditor relationship. American's right to the deposit receipts existed either by virtue of its first trust deed or the orders of the bankruptcy court, not because it had any ownership right in the property. The obligation which American owed the tenants was a personal obligation which existed because of privity of contract and which did not run with the title. (*Kaufman v. Williams,* 92 N.J.L. 182 [104 A. 202]; *Mauro v. Alvino,* 90 Misc. 328 [152 N.Y.S. 963].) In the absence

---

such overdue rent or other sum. In the event of the failure of Lessee to keep and perform all of the terms, covenants and conditions of this lease to be kept and performed by Lessee, then at. the option of Lessor said Lessor may, after terminating said lease, appropriate and apply said entire $_____, or so much thereof as may be necessary, to compensate Lessor for all loss or damage sustained or suffered by Lessor due to such breach on the part of Lessee. Should the entire $_____, or any portion thereof, be appropriated and applied by Lessor for the payment of overdue rent or other sums due and payable to Lessor by Lessee hereunder, then Lessee shall, upon the written demand of Lessor, forthwith remit to Lessor a sufficient amount in cash to restore said security to the original sum of $_____, and Lessee's failure to do so with five (5) days after receipt of such demand shall constitute a breach of this lease. Should Lessee comply with all of said terms, covenants and conditions and promptly pay all of the rental herein provided for as it falls due, and all other sums payable by Lessee to Lessor hereunder, the said sum of $_____ shall be returned in full to Lessee at the end of the term of this lease or upon the earlier termination of this lease under the provisions of Paragraph ___ hereof."

[5]Civil Code section 2221 states:
"Subject to the provisions of Section 852 [requirement of writing], a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:
"1. An intention on the part of the trustor to create a trust, and,
"2. The subject, purpose, and beneficiary of the trust."

of agreement, a sale of the property did not transfer the security deposits to the buyer. (*Gallagher* v. *McMann,* 119 Cal.App. 688, 690 [7 P.2d 204].) Federated acquired no right to the security deposits merely because it succeeded to the title to the property. It had no contractual rights to such security deposits with either American or Eichler or Central Towers. It should be noted that this rule regarding transfer of security deposits was changed in certain limited respects effective January 1, 1971 (subsequent to the transaction involved in the case at bar) when the Legislature enacted Civil Code section 1951.[6] Under the 1971 statute a landlord, upon selling the property, has an option to refund security deposits to tenants or transfer the funds to the new buyer under certain conditions and in either event the landlord is relieved of personal liability.

Here American applied the security deposits to reduce its claim with the knowledge and authority of the bankruptcy court, and with the knowledge and agreement of the new buyer.

[6]Civil Code section 1951 reads:

"(a) Any payment or deposit of money the primary function of which is to secure the performance of a rental agreement or any part of such an agreement, other than a payment or deposit, including an advance payment of rent, made to secure the execution of a rental agreement, shall be governed by the provisions of this section.

"(b) Any such payment or deposit of money shall be held by the landlord for the tenant who is party to such agreement. The claim of a tenant to such payment or deposit shall be prior to the claim of any creditor of the landlord, except a trustee in bankruptcy.

"(c) The landlord may claim of such payment or deposit only such amounts as are reasonably necessary to remedy tenant defaults in the payment of rent, to repair damages to the premises caused by the tenant, or to claim such premises upon termination of the tenancy, if the payment or deposit is made for any or all of those specific purposes. Any remaining portion of such payment or deposit shall be returned to the tenant no later than two weeks after termination of his tenancy.

"(d) Upon termination of the landlord's interest in the dwelling unit in question, whether by sale, assignment, death, appointment of receiver or otherwise, the landlord or his agent shall, within a reasonable time, do one of the following acts, either of which shall relieve him of further liability with respect to such payment or deposit:

"(1) Transfer the portion of such payment or deposit remaining after any lawful deductions made under subdivision (c) to the landlord's successor in interest, and thereafter notify the tenant by registered mail of such transfer, and of the transferee's name and address.

"(2) Return the portion of such payment or deposit remaining after any lawful deductions made under subdivision (c) to the tenant.

"(e) Upon receipt of any portion of such payment or deposit under paragraph (1) of subdivision (d), the transferee shall have all of the rights and obligations of a landlord holding such payment or deposit with respect to such payment or deposit.

"(f) The bad faith retention by a landlord or transferee of a payment or deposit or any portion thereof, in violation of this section, may subject the landlord or his transferee to damages not to exceed two hundred dollars ($200), in addition to any actual damages.

"(g) This section shall become operative on January 1, 1971, and shall apply only to payments or deposits made on or after such date."

(*Note:* Since there were two code sections numbered 1951, the section is now numbered 1950.5.)

The bankruptcy court authorized American to apply "all rents" to its claims. American contends that Federated also knew that it was applying the security deposits to reduce its claim because Coldwell Banker sent copies of its monthly statements to Federated. But Federated denies such knowledge. However, its vice president, Jones, testified:

"Q. Now, from your testimony, Mr. Jones, I take it that you understood that American was applying the rent proceeds received from the receiver to the reduction of its loan upon the Central Towers?

"A. Yes.

"Q. What was the basis of your understanding of that?

"A. I knew there was a receiver appointed and they were sending the monies to American. They would have to apply it on the loan. I don't think it went any further than that. The received monies were going to American."

It is true that this testimony requires interpretation of the meaning of the words "received monies" i.e., whether or not "received monies" included security deposits. Federated must have known that at least Coldwell Banker did not *otherwise* account for the security deposits. Federated apparently made no effort to find out what happened to the security deposits until after Central Towers demanded that they be deposited in escrow. In our view, the trial court could have properly concluded therefore from the totality of the evidence that such course of conduct was with at least the implied consent of Federated. Actually, since its consent was not legally required, whether or not Federated consented is immaterial, except as it sheds light on the interpretation of the contract.

The trial court was required to interpret paragraph 7 of Exhibit L and specifically whether the figure $325,000 therein used was arrived at by the parties after application of the security deposits to reduce American's claim or more specifically whether American would have consented to limit its claim in the escrow to a sum of $325,000 (in excess of the new loan with costs) if it had not reduced its claim by the amount of the security deposits. The agreement (Exhibit L) was drawn by Federated. Therefore the court was required to resolve any ambiguity therein against the author—Federated. (Civ. Code, § 1654;[7] *Taylor* v. *J. B. Hill*

---

[7]Civil Code section 1654 states: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. . . ."

*Co.*, 31 Cal.2d 373 [189 P.2d 258]; *Pacific Lbr. Co.* v. *Ind. Acc. Com.*, 22 Cal.2d 410 [139 P.2d 892]; *Yamanishi* v. *Bleily & Collishaw, Inc.*, 29 Cal.App.3d 457, 463 [105 Cal.Rptr. 580]; *Gillespie* v. *Ormsby*, 126 Cal.App.2d 513, 522 [272 P.2d 949]. Thus, Federated may not read additional language into the agreement.

The law is clear that as between American and the tenants, American was obligated to repay to the tenants upon termination of the lease any portion of the security deposits to which it was not entitled (by virtue of some breach by the tenant). The lessor, American in this situation, may use the security deposit for damages which have been proven. (*A-1 Garage* v. *Lange Investment Co.*, 6 Cal.App.2d 593 [44 P.2d 681].) In *Garfinkle* v. *Montgomery*, 113 Cal.App.2d 149, 158 [248 P.2d 52], the court said: "In the present case the lease has been terminated; there were no obligations remaining thereunder. Under such circumstances we know of no legal theory and counsel has suggested none which would allow the lessor to retain the fund. Such retention, if allowed, would be an outright forfeiture. The trial court properly treated the deposited funds as property of the lessees, applicable insofar as necessary in the discharge of the judgment rendered in favor of the lessor."

It is equally clear that no agreement, express or implied, between American, Federated or Central Towers could reduce or eliminate the rights of the tenants to a refund of the security deposits or portion thereof to which they would be entitled under the terms of the lease. The tenants had a right to receive a refund of their security deposits. Any balance of the security deposit remaining after the payment of actual damages must be returned to the tenants. (*Thompson* v. *Swiryn*, 95 Cal.App.2d 619, 627 [213 P.2d 740].) Initially, the obligation to repay the tenants rested entirely on American. However, American, in effect, told the buyer, Central Towers, that it had applied the security deposits to reduce its claim and at least inferentially that if the buyer did not approve of this arrangement, American would have to increase the amount of its claim. When Central Towers "agreed" to that arrangement, it in effect, undertook to discharge American's obligation to the tenants. This is understandable since Central Towers as the new owner/landlord would presumably be interested in maintaining amicable relations with its tenants. The court therefore could properly conclude that as between American, Central Towers and the tenants, Central Towers was assuming to discharge American's obligation to the tenants. The court could properly conclude that that agreement did not inure to the benefit of Federated either as a matter of fact or as a matter

of law. Federated, as seller, was under no legal obligation (absent a contractual obligation to do so) to pay the security deposits into escrow or to pay the security deposits to the buyer since the security deposits did not run with the title. (*Gallagher* v. *McMann,* 119 Cal.App. 688, 690 [7 P.2d 204].) If Federated had any such obligation it could only be contractual in origin. Federated agreed in a contract with Central Towers to deliver the "security rent deposits." Central Towers apparently would not agree to reduce its contractual rights under its contractual arrangements with Federated, that the security deposits be deposited in escrow. If Federated was obligated by contract to deposit the security deposits in escrow, Central Towers had the right to refuse to modify or reduce its contractual rights as expressed in its contract with Federated and in its escrow instructions. The proximate cause of Federated's dilemma is that it obligated itself to Central Towers to deliver the security deposit into the escrow without acquiring an enforceable contractual right to require American to deliver the security deposits to Federated. Since Federated drafted the agreement with American, it is the author of its own dilemma.

As we have noted, absent a contractual right to receive the security deposits from American, Federated would have no right thereto by virtue of its acquisition of legal title to the building since the security deposits did not run with the title and remained as a personal obligation of American to the tenants which was assumed by Central Towers. Federated could not voluntarily deposit such security deposits in escrow and thereby impose upon American an obligation which was contrary to American's obligation to Federated and Central Tower's obligation to American. Federated could not, in effect, rewrite the three-way deal by its own unilateral act.

We conclude that the trial court correctly denied recovery to Federated.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.