**In re Mohammad Samih BARAKAT, Debtor.**

**Mohammad Samih BARAKAT, Appellant,**

**v.**

**The LIFE INSURANCE COMPANY OF VIRGINIA, Appellee.**

No. 95–55709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1996.

Decided Nov. 12, 1996.

Mark T. Young, Marc A. Lieberman, and Steven M. Mayer, Mayer, Glassman & Gaines, Los Angeles, CA, for appellant.

Jeffrey I. Golden and Jennifer Ann Golison, Albert, Weiland & Golden, Costa Mesa, CA, for appellee.

Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI,[*] United States Court of International Trade Judge.

RESTANI, Judge.

Debtor-appellant Mohammad Samih Barakat ("Barakat" or "Debtor") sought confirmation of a Plan of Reorganization (the "Plan") filed under Chapter 11 of the Bankruptcy Code. The bankruptcy court denied confirmation of the Plan, finding that it was impermissible for the Plan to: (1) separately classify from the class of general unsecured creditors the unsecured mortgage deficiency claim of The Life Insurance Company of Virginia; (2) separately classify the unsecured pre-bankruptcy claims of creditors who continue to do business with Debtor; and (3) identify security deposit creditors as an "impaired" class. Debtor appealed the bankruptcy court's findings to the district court, which affirmed. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d), and we affirm the district court.

## FACTUAL BACKGROUND

Kittridge Garden Associates ("KGA"), a California general partnership, owned and managed an 85–unit, three-story residential apartment building located at 14420 Kit-

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

tridge Street, Van Nuys, California (the "Kittridge property"). On August 25, 1988, KGA executed a promissory note, secured by a first deed of trust on the Kittridge property, in favor of The Life Insurance Company of Virginia ("LICV"). The note was in the principal sum of $4,550,000, with an annual interest rate of 9.625%.

In May 1989, KGA conveyed all of its rights in the Kittridge property to Barakat and four relatives (the "Barakat Group").[1] The Barakat Group paid $2,470,000 in cash, and assumed KGA's obligations under the promissory note. At the time, the balance due on the note was $4,410,000.

The Barakat Group made all payments on the note until June 1993. According to appellant, the recession in 1993 increased the vacancy rate and forced the Kittridge property to operate at a loss. On June 13, 1993, title to the Kittridge property was consolidated in Barakat and his wife by quitclaim deed from the other members of the Barakat Group.[2] Barakat thereafter defaulted on the payments to LICV. After unsuccessful negotiations to restructure the promissory note, LICV sought judicial foreclosure and the appointment of a receiver. On October 22, 1993, Barakat filed for relief under Chapter 11 of the Bankruptcy Code, thereby staying LICV's foreclosure action.

As of the date of Debtor's petition, the only secured claim against the property was held by LICV. According to LICV, Debtor owed more than $4,669,001 on the promissory note. The district court found the value of the Kittridge property to be $3,970,000.

On November 17, 1993, LICV filed a motion seeking relief from the automatic stay. On January 13, 1994, the bankruptcy court granted LICV's motion in part, modifying the automatic stay to allow LICV to pursue either judicial or nonjudicial foreclosure against the Kittridge property, except that LICV could not proceed with the foreclosure sale without further order of the bankruptcy court. The bankruptcy court denied LICV's request to appoint a receiver.

On June 20, 1994, Debtor sought the bankruptcy court's approval of an amended disclosure statement[3] and plan of reorganization. The disclosure statement and plan provided for reduction of LICV's secured claim to $3,970,000, the fair market value of the property and proposed seven classes.[4]

The bankruptcy court identified several problems with the plan. First, LICV's deficiency claim[5] should have been part of the general unsecured class. Second, there was no justification for separately classifying the pre-bankruptcy claims of ongoing trade creditors from other unsecured debt. Third, under the plan, security deposit creditors were not impaired. The court allowed Debtor to correct these problems and amend the proposed disclosure statement. ER at 195.

1. The Barakat group included Adil Barakat and Rihab Barakat, husband and wife, Siham Barakat, Debtor's wife, and Nabil Y. Barakat.

2. The deed was recorded on August 16, 1993.

3. A previously filed disclosure statement was withdrawn by Debtor.

4. The district court noted the proposed classes as follows:

Class 1, LICV's secured claim in the amount of $3,970,000 (secured by the [Kittridge] property);
Class 2, priority claims for individual tenant pre-petition security deposits to the extent of $900 per tenant. The class consisted of 51 claimants and $29,960 in claims. The claims were entitled to priority under [§] 507(a)(6) of the Bankruptcy Code;
Class 3, LICV's unsecured deficiency claim (the unsecured portion of the LICV note, also defined as the difference between the amount owed under the LICV note as of the commencement date and the Class 1 claim). The amount of the deficiency claim was $570,088.36;
Class 4, non-priority claims of tenants for pre-petition security deposits. The class consisted of eighteen claimants, and $3,085 in claims;
Class 5, general unsecured claims that were not separately classified. The class consisted of ten claimants, and total claims of $21,616.22;
Class 6, general unsecured claims held by creditors who continued to do business with Debtor after Debtor filed his petition. These creditors have an ongoing business relationship with Debtor. The class consisted of thirteen claimants, and total claims of $20,434;
Class 7, general unsecured claims held by insiders of Debtor. The class consisted of two claimants, and total claims of $29,516.31.
Appellant's Excerpts of Record ("ER") at 217–18.

5. LICV's deficiency claim amounted to $570,088.36. ER at 217.

On August 2, 1994, Debtor filed a Second Amended Plan of Reorganization ("the Plan") and a Second Amended Disclosure Statement. The bankruptcy court reviewed the plan and found that the only change made by Debtor was that Debtor's relatives would contribute $50,000 in cash. ER at 196. LICV challenged the new plan on several grounds.

The bankruptcy court found that it was bound by the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision in *Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage)*, 166 B.R. 892 (9th Cir. BAP 1994), holding that it was impermissible, absent a business justification, to separately classify a deficiency claim from the general unsecured class. Finding no business justification, the bankruptcy court denied Debtor's separate classification of LICV's deficiency claim. ER at 197. The bankruptcy court further found that the claims of security deposit creditors were not impaired under the Plan. ER at 209. Finally, there was no justification to separately classify the prebankruptcy claims of ongoing trade creditors from those of general unsecured creditors. ER at 210.

Under these rulings, the plan could not be confirmed. LICV, the largest unsecured claimant, represented at least two-thirds in amount of the allowed interests in the class. Under § 1126(c),[6] it would have to accept the Plan for the class to accept. *See* 11 U.S.C. § 1126(c). LICV would not accept the Plan because it sought to foreclose on its security. As no impaired accepting class existed, other than insiders who have no authority to vote for this purpose, the Bankruptcy Code requirements for Plan acceptance were not satisfied. The Plan could not obtain the vote of a legitimately impaired class of non-insider creditors as required under 11 U.S.C. § 1129(a)(10).

On August 15 & 16, 1994, the bankruptcy court entered orders granting LICV's motion for relief from the automatic stay, and denying approval of Debtor's second amended disclosure statement. Debtor appealed these decisions to the district court. The bankruptcy court granted Debtor's motion for a stay pending appeal. The district court affirmed the bankruptcy court's rulings, finding that (1) the bankruptcy court correctly found that it was bound by the BAP's decision in *Tucson Self-Storage*, (2) separate classification of LICV's deficiency claim was impermissible, (3) tenant security deposit creditors were not impaired under the Plan, and (4) separate classification of the claims of ongoing trade creditors was impermissible. ER at 220–230. Debtor appeals from the final judgment of the district court.

### STANDARD OF REVIEW

On appeal from a final judgment of the district court reviewing a decision of the bankruptcy court, we review the bankruptcy court's factual findings for clear error and the district court's legal conclusions *de novo*. *See Henderson v. Buchanan*, 985 F.2d 1021, 1023–24 (9th Cir.1993). The bankruptcy court's finding that a claim is or is not substantially similar to other claims, constitutes a finding of fact reviewable under the clearly erroneous standard. *Steelcase Inc. v. Johnston* (In re Johnston), 21 F.3d 323, 327 (9th Cir.1994). A legal issue, however, underlies the classification here. That is, is there any limitation on the separate classification of similar unsecured claims. The court resolves such issues *de novo*. *See id.* at 328–29; *Vanderpark Properties Inc. v. Buchbinder (In re Windmill Farms)*, 841 F.2d 1467, 1469 (9th Cir.1988).

### DISCUSSION

A. *Unsecured Deficiency Claim*

Under § 1129(a), the bankruptcy court may confirm a plan of reorganization if each class of impaired claims accepts the plan, 11 U.S.C. § 1129(a)(8), or at least one class of claims that is impaired under the plan accepts the plan, "without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). Section 1129(b)(1) provides for a "cramdown" procedure. 11

---

**6.** Unless otherwise noted, all citations are to the Bankruptcy Code, Title 11, United States Code, in effect prior to the 1994 amendments.

U.S.C. § 1129(b)(1) note (Legislative Statements). That provision allows confirmation over the objection of dissenting classes provided the plan is fair and equitable [7] and does not unfairly discriminate against any impaired claims, 11 U.S.C. § 1129(b), and the plan meets all the statutory requirements of § 1129(a).

In this case, a secured creditor, LICV, held a claim against Debtor that exceeded the value of the collateral, thus implicating 11 U.S.C. §§ 506(a) & 1111(b). Section 506(a) provides that a claim secured by a lien on property is considered secured up to the value of such property and unsecured for the remainder. Under § 1111(b)(2),[8] the creditor class may elect to have the claim allowed as a secured claim for the full contractual amount rather than the amount of the collateral's value. LICV did not make the § 1111(b)(2) election, presumably so that it could vote as a general unsecured creditor in the amount of its deficiency claim.

Under the Plan, Debtor classified LICV's unsecured deficiency claim separately from other general unsecured claims for the purpose of creating an impaired class that would accept the Plan. If LICV's deficiency claim were classified with other unsecured claims, the Plan could not be accepted so long as LICV, the largest unsecured claimant, objected, and no other impaired class existed to accept the Plan. *See* 11 U.S.C. § 1126(c).

Debtor argues that it was permissible to separately classify LICV's unsecured deficiency claim from the claims of general unsecured creditors pursuant to the unambiguous language of § 1122(a). Section 1122 provides that

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122. While dissimilar claims may not be put in the same class, the Bankruptcy Code does not expressly state whether the plan may separately classify similar claims, or whether it must classify similar claims together. Courts disagree on this issue. *Compare Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture* (In re Greystone III), 995 F.2d 1274, 1278 (5th Cir.1991), *cert. denied,* 506 U.S. 821, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992) *with In re ZRM–Oklahoma Partnership,* 156 B.R. 67, 70 (Bankr. W.D.Okla.1993). The argument for permitting separate classification of similar claims is simply that the Code does not forbid it expressly. The "plain language of the statute [§ 1122(a) ] does not alone support any other restriction" than prohibiting the single classification of dissimilar claims. *ZRM–Oklahoma Partnership,* 156 B.R. at 70. A counter argument is that a wholly permissive view of classification of similar classes would render § 1122(b) superfluous, as "there would be no need for § 1122(b) specifically to authorize a separate class of smaller unsecured claims." *Greystone III,* 995 F.2d at 1278.

Most courts have agreed that § 1122 contemplates some limits on the separate classi-

---

**7.** "Fair and equitable" historically has included a requirement that no class subordinate to the dissenting class may take anything pursuant to a reorganization plan. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988). This requirement is codified at 11 U.S.C. § 1129(b)(2)(B)(ii). *Id.*

**8.** Section 1111(b) provides, in relevant part, as follows:

(b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on

account of such claim, whether or not such holder has such recourse, unless—

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; . . .

. . . .

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

11 U.S.C. § 1111(b).

fication of similar claims. *See, e.g., Greystone III,* 995 F.2d at 1279. Although noting that similar claims may be placed in different classes, the court in *Greystone* found that "[there is] one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." 995 F.2d at 1279; *see Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.* (In re U.S. Truck Co.), 800 F.2d 581, 586 (6th Cir.1986). This principle has been adopted by a majority of the Circuits that have addressed the issue. *See, e.g., Boston Post Rd. Ltd. v. Federal Deposit Ins. Corp.* (In re Boston Post Rd.), 21 F.3d 477, 483 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995); *Travelers Ins. Co. v. Bryson Properties XVIII* (In re Bryson Properties), 961 F.2d 496, 502 (4th Cir.1992) ("[A]though separate classification of similar claims may not be prohibited, it 'may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims.' ") (*quoting Greystone III,* 948 F.2d at 139), *cert. denied,* 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992);. *In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir.1990) ("[I]f the classifications are designed to manipulate class voting ..., the plan cannot be confirmed."). *But see ZRM-Oklahoma,* 156 B.R. at 70 (arguing that even if debtor gerrymanders confirmation vote, other sections of the Bankruptcy Code adequately protect creditors, such as § 1129(b) (nondiscriminatory & fair and equitable requirement), § 1129(a)(7) (best interests of creditors test), § 1111(b) (recourse election)).

Here, Debtor argues that separate classification of LICV's deficiency claim was not solely to manipulate class voting. Instead, Debtor contends that LICV's claim was not "substantially similar" to the other general unsecured claims. On this issue Debtor primarily relies upon *In re Woodbrook Assocs.,* 19 F.3d 312 (7th Cir.1994).

In *Woodbrook,* the court concluded that it was permissible to separately classify an unsecured deficiency claim created by § 1111(b) from general unsecured claims. The court noted that

> [s]ignificant disparities ... exist between the legal rights of the holder of a [§ ]1111(b) claim and the holder of a general unsecured claim which render the two claims not substantially similar and which preclude the two from being classified together under [§ ]1122(a). Thus, we cannot accept the proposition ... that separate classification of a [§ ]1111(b) claim is nearly conclusive evidence of a debtor's intent to gerrymander an affirmative vote for confirmation. These disparities in rights stem from the most obvious difference between the two claims: a general unsecured claim exists in all chapters of the Code, while a [§ ]1111(b) claim exists only as long as the case remains in Chapter 11 and, once converted to a Chapter 7 case, recovery is limited to its collateral.

*Id.* at 318. *See also In re SM 104 Ltd.,* 160 B.R. 202, 218–221 (Bankr.S.D.Fla.1993) (holding § 1111(b) claim not "substantially similar" to general unsecured claims, thus rendering debtor's intent for classification irrelevant); *Principal Mutual Life Ins. Co. v. Baldwin Park Towne Ctr., Ltd.* (In re Baldwin Park Towne Ctr., Ltd.), 171 B.R. 374, 377 (Bankr.C.D.Cal.1994) (finding "nature, kind, species and character" of unsecured deficiency claim substantially different from general unsecured claims).

Although this Circuit has not addressed this issue, a number of courts declined to allow separate treatment based solely on the distinction that the claim is created by operation of law. *See, e.g., Lumber Exchange Bldg. Ltd. Partnership v. Mutual Life Ins. Co. of New York* (*In re Lumber Exchange Bldg. Ltd.*), 968 F.2d 647, 649 (8th Cir.1992) (rejecting argument that separate classification was warranted because creditor's unsecured recourse claim arose by operation of law under 11 U.S.C. § 1111(b)); *Greystone III,* 995 F.2d at 1279–80. In *Greystone III,* the court noted that § 1111(b) not only creates recourse claims where state antideficiency laws would abolish them, but also provides the undersecured creditor an election with respect to the treatment of its deficiency claim. 995 F.2d at 1279. Separate classifica-

tion of similar claims by virtue of the legal rights of the holder of a § 1111(b) claim, the court concluded, would render the § 1111(b) election "meaningless," as "[p]lan proponents could effectively disenfranchise the holders of such [unsecured deficiency] claims by placing them in a separate class and confirming the plan over their objection by cramdown." *Id.* at 1280. Thus, the court found that, absent valid business justifications, separate classification of a Code-created deficiency claim was impermissible. *Id.*

In *Boston Post Rd.,* 21 F.3d at 483, the Second Circuit also held that separate classification for the purpose of preventing the undersecured creditor from rejecting the plan is contrary to the principles underlying the Bankruptcy Code, that is, that creditors holding greater debt should have a comparably greater voice in reorganization. The court stated:

> The purpose of the Section 1111(b) election is to allow the undersecured creditor to weigh in its vote with the votes of the other unsecured creditors. Allowing the unsecured trade creditors to constitute their own class would effectively nullify the option that Congress provided to undersecured creditors to vote their deficiency as unsecured debt.

*Id.* Although the court noted that prohibiting the debtor from separately classifying deficiency claims will effectively bar single asset debtors from utilizing the Bankruptcy Code's cramdown provisions, the court was not persuaded that a single-asset debtor should be able to cramdown a plan that disadvantages the largest creditor. *Id.* Thus, absent a legitimate business or economic reason, separate classification is not permitted. *Id.*

■ The Ninth Circuit BAP decision in *Tucson Self-Storage,* 166 B.R. at 897, agreed with the "one clear rule" discussed by *Greystone III,* 995 F.2d at 1279, that a debtor cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." The *Tucson Self-Storage* court held that, absent a business or

economic justification, separate classification of unsecured claims solely on their right to make a § 1111(b)(2) election is an impermissible classification in violation of § 1122(a). 166 B.R. at 897–99; *see also Montclair Retail Ctr. L.P. v. Bank of the West (In re Montclair Retail Ctr.),* 177 B.R. 663, 665–66 (9th Cir. BAP 1995) (following *Tucson Self-Storage).* We agree with the principles enunciated in the *Greystone III* line of cases, that is, absent legitimate business or economic justification, it is impermissible for Debtor to classify LICV's deficiency claim separately from general unsecured claims.

Debtor also cites *In re Johnston,* 21 F.3d at 327, in support of its position. In *Johnston,* the court concluded that separate classification of unsecured creditors may be justified "where the legal character of their claims is such as to accord them a status different from other unsecured creditors." *Id.* at 328 (*quoting In re Los Angeles Land and Invs.,* 282 F.Supp. 448, 453–54). *Johnston,* however, is distinguishable. The court found that the creditor in *Johnston* was embroiled in litigation with the debtor regarding issues unrelated to the bankruptcy, that, if successful, would have fully paid the creditor's claim before all other unsecured creditors. *Id.* Further, the creditor's claim was potentially exceeded by the debtor's own claim against the creditor and subject to offset. *Id.* Finally, the creditor's claim was partially secured by a security interest in other property. *Id.* at 326. Thus, the court concluded, the bankruptcy court did not clearly err in finding that the creditor held a different legal status from that of the other unsecured claimants. *Id.* at 328. In this case, these special circumstances do not exist. The claim at issue here is simply a legally created recourse debt. The bankruptcy court found that Debtor offered no business or economic justification for the separate classification of such a deficiency claim. The sole purpose of Debtor's separate classification was to obtain acceptance of the Plan. The bankruptcy court did not err in its finding that the claims were similar and that separate classification was not permitted.[9]

## B. *Security Deposit Creditors*

Debtor divided the tenants' pre-petition security deposits into two classes. Class 2 consisted of 51 tenants with priority claims for up to $900 per tenant. ER at 68–69. The statute provides a priority for claims to the extent of $900 held by individuals who have made deposits with the debtor "in connection with the purchase, lease, or rental of property." 11 U.S.C. § 507(a)(6). Class 4 consisted of 18 tenants with claims for the non-priority portion of the pre-petition security deposits which were not due and owing at the time the Plan was submitted. ER at 69.

Under the Plan, Debtor proposed to deposit the entire amount of the Class 2 claims into a Priority Tenant Deposit Account on the effective date or as soon thereafter as practicable. Debtor would pay these claims "as such claims come due from the Operating Account or (if such funds are on deposit) the Priority Tenant Deposit Account." ER at 70. Class 4 claimants would be paid as such payments "become due under state law." ER at 77.

As a threshold matter, appellee argues that the separate classification by Debtor of the Class 4 unsecured tenant deposit claims violates § 1122. Appellee raised this objection before the bankruptcy court, but neither the bankruptcy court nor the district court addressed the classification issue. It appears that both courts assumed that separate classification was proper. In any event, we find that the bankruptcy court did not err in separately classifying this class. The likely basis for the separate classification, as contended by Debtor below, was that such claims were legally different from the other unsecured claims. Under state law, the security deposit claims were not yet due. *See Federated Mortgage Investors v. American Sav. & Loan Assoc. of Cal.*, 47 Cal.App.3d 917, 121 Cal.Rptr. 137, 142–43 (1975). Moreover, such claims were both contingent and unliquidated, as each claim would become due only when and if the tenant vacates, and then only to the extent that rent is paid up through the date of vacation and the premises are left in the required condition. *Id.* Also, such tenants typically have state law remedies for an accounting of any disposition of a security deposit, return of the security deposit after lawful deductions have been made, or compensatory and punitive sanctions against a landlord for nonpayment of the security deposit. *See* Cal. Civ.Code § 1950.5 (West 1995). Thus, separate classification of this class of claims was appropriate.

Both the bankruptcy court and the district court found that the Class 2 and Class 4 security deposit creditors were not "impaired" under § 1124. A class of claims is impaired under a plan unless, with respect to each claim, the plan:

> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder of such claim ...; or
>
> . . . .
>
> (3) provides that, on the effective date of the plan, the holder of such claim ... receives, on account of such claim ... cash equal to ...
>
> (a) the allowed amount of such claim. . . .

11 U.S.C. § 1124(*l*), (3)(a). Congress intended to define impairment broadly, and, generally, any alteration of a creditor's legal rights constitutes impairment. *L & J Anaheim Assocs. v. Kawasaki Leasing Int'l Inc.* (In re Anaheim Assocs.), 995 F.2d 940, 942–43 (9th Cir.1993). A class that is not impaired is "conclusively presumed to have accepted the plan." 11 U.S.C. § 1126(f).

Under § 1129(a)(9)(B), a class with priority claims under § 507(a)(6), such as Class 2, may receive,

> (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; . . . .

great debate. As we affirm the district court and the bankruptcy court on the merits, we decline to decide the authoritative effect of *Tucson Self–Storage.*

11 U.S.C. § 1129(a)(9)(B). As to Class 2, the district court concluded that Debtor's Plan satisfied these criteria, and Class 2 claimants were unimpaired under the Plan. ER at 229. As to Class 4, the district court determined that the tenants' claims were also "unaltered" because the Plan proposed to pay the tenants their security deposits as they became due, i.e. when the tenants vacated the premises. ER at 229.

Debtor argues that the security deposit creditors were impaired under the Plan. According to Debtor, Article XII of the Plan proposes to discharge, following confirmation of the Plan, the Class 2 and Class 4 claims if Debtor defaults on payment and, in that event, to preclude state law remedies of the Class 2 and Class 4 creditors. Further, the Plan proposes that Class 2 creditors will be paid as their claims become due under state law, but only to the extent that such funds are available through the Priority Tenant Deposit Account established from the net revenues of the Kittridge property. According to Debtor, if the Kittridge property operates at a loss, no funds would be deposited into the Priority Tenant Deposit Account, resulting in insufficient assets to pay the Class 2 claimants. This appears to conflict with the Plan's proposed provision requiring the entire amount of the allowed Class 2 claims to be deposited into the Priority Tenant Deposit Account on the effective date of the Plan or soon thereafter. ER at 76. Finally, Debtor asserts that the other possible basis for finding a class to be "unimpaired"— payment in full on the effective date of the Plan—is inapplicable, as the Plan does not propose to pay in full in cash the Class 2 and Class 4 claims on the effective date. Based on the foregoing, Debtor contends, the Class 2 and Class 4 creditors were "impaired" because their legal, equitable, and contractual rights were changed under the Plan. We disagree.

■ We affirm the lower courts' rulings that the Class 2 and Class 4 were not impaired classes eligible to vote on the Plan, albeit on a somewhat different basis. The Class 2 and Class 4 tenant security deposit claimants could not constitute a voting class for purposes of effecting a cramdown. Tenant security depositors, where the debtor assumes the lease, as in the instant case,[10] "have no provable claim against the bankruptcy estate." *Boston Post Rd.*, 21 F.3d at 484; *Greystone III*, 995 F.2d at 1281 ("A party to a lease is considered a 'creditor' who is allowed to vote [under] 11 U.S.C. § 1126(c), only when the party has a claim against the estate that arises from *rejection* of a lease."). The obligations assumed by the debtor under the continued leases constitute post-petition administrative claims under § 503(b)(1)(A) and are entitled to priority under § 507(a)(1). *Boston Post Rd.*, 21 F.3d at 484. Their holders are not entitled to vote on a plan of reorganization as they are entitled to be paid in full, pursuant to 11 U.S.C. § 1129(a)(9)(A). *Id.; Greystone III*, 995 F.2d at 1281. Thus, the Class 2 and Class 4 claimants were not entitled to vote on Debtor's Plan. We affirm the district court's finding that no impaired class existed to vote for confirmation of the Plan.

### C. Unsecured Trade Creditors

■ Debtor also separately classified the pre-petition claims of trade creditors (Class 6) from general unsecured claims. Under the Plan, trade creditors were creditors who continued to do business with Debtor after Debtor filed for Chapter 11 protection. ER at 73. These creditors provided such services as trash collection, pool maintenance, roof repair, etc. ER at 210. The bankruptcy court found it impermissible to separately classify these creditors. *Id.*

Debtor argues that separate classification is justified because trade creditors expect to earn profits from future dealings with Debtor. The bankruptcy court noted, however, that "literally thousands of companies are available to provide the [ ] services" of the trade creditors, thus none of the trade creditors were essential to Debtor's continued maintenance of the apartment building. ER

---

**10.** The Plan provides that "[a]ll pre-petition executory contracts to which Debtor is a party which have not been assumed or rejected prior to the Effective Date shall be deemed assumed as of the Effective Date, pursuant to 11 U.S.C. § 365. These executory contracts include all leases with tenants...." ER at 84.

at 210; *see Boston Post Rd.,* 21 F.3d at 483 (no valid justification for separate classification of trade creditors that were few and not essential to debtor's future). The factual basis of the bankruptcy court's decisions is not challenged and there is no legal distinction between the trade creditor claims and the general unsecured claims that would justify separate classification.[11] The bankruptcy court did not err.

## CONCLUSION

Debtor's Plan of Reorganization was properly denied confirmation for lack of the assent of an impaired non-insider class of creditors. LICV's unsecured deficiency claim and the unsecured trade creditors do not qualify as such a class; they were segregated from like unsecured creditors without any demonstrated legitimate reason. Nor do the tenant security deposit creditors qualify as such a class; as holders of administrative claims entitled to be paid in full as priority claimants, they were not entitled to vote on the Plan of Reorganization. In sum, we AFFIRM the district court.

---

**11.** We need not reach the issue of whether Debtor's Plan of Reorganization violates the absolute priority rule.