In re James E. JOHNSTON, dba
Johnston Enterprises,
Debtor.

STEELCASE INC., Appellant,

v.

James E. JOHNSTON and Unsecured
Creditors' Committee, Appellees.

No. 92–15976.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided April 4, 1994.

As Amended May 6, 1994.

**324**

R. Dale Ginter, Dan L. Carroll, Lisa L. Ditora, Downey, Brand, Seymour & Rohwer, Sacramento, CA, for appellant.

David M. Meegan, Roberta Lindsey Scott, Moore, Meegan, Hanschu & Kassenbrock, Sacramento, CA, for appellee.

Before: WALLACE, Chief Judge, GARTH * and WIGGINS, Circuit Judges.

## OPINION

GARTH, Circuit Judge:

We are called upon in this case to decide: (1) the proper standard for determining when an unsecured claim may be classified separately from other unsecured claims under 11 U.S.C. § 1122(a)[1]; and (2) whether the absolute priority rule, codified at 11 U.S.C. § 1129(b)(2)(B), is violated whenever a debtor retains assets of the bankrupt estate before actual payment is made in full to all senior unsecured creditors.[2]

The bankruptcy appellate panel (BAP) and the bankruptcy court determined that the claims of the appellant, Steelcase Inc., were properly classified in the plan of reorganization filed by the debtor, appellee James E. Johnston, and that Johnston's plan of reorganization does not violate the absolute priority rule.

---

* Honorable Leonard I. Garth, United States Circuit Judge, Third Circuit Court of Appeals, sitting by designation.

1. 11 U.S.C. § 1122(a) in pertinent part provides:
[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

2. 11 U.S.C. § 1129(b)(2)(B) provides that:
(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
    *    *    *    *    *    *
(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

Although the BAP failed to apply either the proper standard of review in assessing the bankruptcy court's approval of the plan's classification of claims, and read *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988) differently than we do in interpreting requirements of the absolute priority rule, we nevertheless agree with its ultimate conclusion. We, therefore, will affirm the June 1, 1992 judgment of the BAP which affirmed the bankruptcy court's order of July 19, 1991 confirming Johnston's plan of reorganization.[3]

## I.

On October 1, 1990, Johnston filed a voluntary Chapter 11 petition for reorganization of his business, Johnston Enterprises. Johnston Enterprises was engaged in the business of real estate development and investment. At that time, Johnston also was chief executive officer and majority stockholder of Capital Office Systems, Inc. ("COSI"). The day after Johnston filed his Chapter 11 petition, COS brought its own Chapter 11 petition. Steelcase filed claims in both bankruptcies in the amount of $1,913,058.90 plus interest, attorney's fees, costs and other charges. Specifically, Steelcase claimed that it was owed that amount for office furniture and related systems which Steelcase had manufactured and delivered to COS pursuant to open-credit financing personally guaranteed by Johnston.

On the same day that the COS bankruptcy petition was filed, COS and Johnston filed a civil complaint against Steelcase in the Superior Court of California for the County of Sacramento. COS and Johnston alleged in the state complaint that Steelcase had reneged on its promise that COS would be the exclusive Steelcase dealership in the Sacramento area. According to COS and Johnston, their financial risk was increased when Steelcase established a competing dealership. Steelcase responded with a counterclaim after obtaining relief from the automatic stay of 11 U.S.C. § 362.[4] Steelcase's counterclaim asserted causes of action against COS for the delivered Steelcase products and against Johnston based on his personal guarantee for the cost of the products. The civil case subsequently was removed to the federal district court and thereafter transferred to the bankruptcy court, where it is pending trial.

Johnston filed his Chapter 11 reorganization plan on January 28, 1991. The plan was approved, as amended, by order of the bankruptcy court on July 19, 1991. Johnston's confirmed second amended reorganization plan lists 26 classes. The Johnston plan disputed Steelcase's claim, which is classified separately in Class 23. Although the plan provides for the payment in full, plus interest, of all unsecured creditors, payment to Steelcase is contingent upon the success of Steelcase's litigation against Johnston. If the litigation is resolved in Steelcase's favor, Steelcase will receive full payment of its claim within 120 days following entry of a judgment. All other unsecured claimants will receive monthly payments under the plan.

Johnston's own interest in estate property is classified in Class 26. Confirmation of the reorganization plan will revest the property of the bankruptcy estate in Johnston upon the effective date of the plan.[5] Under the

---

**3.** The BAP's original order affirming the order of the bankruptcy court was entered on April 6, 1992. The BAP's amended order and amended opinion of June 1, 1992 corrected a misstatement of fact contained in its original April 6, 1992 order.

**4.** Johnston's voluntary Chapter 11 proceeding was filed under 11 U.S.C. § 301. The automatic stay provisions of § 362(a) provide in relevant part:

[A] petition filed under section 301 ... of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title * * *.

**5.** The effective date of the plan is "[t]he first day of the month following the month in which a non-appealable order confirming the Plan is entered." Debtor's Second Amended Plan of Reorganization, ¶ 1.08.

plan, Johnston also may use up to $50,000 a month from estate assets to pay his living expenses. The plan will be implemented through the proceeds of sale and the refinancing of some of Johnston's personally-held real estate and future dividends from investments, as well as from the operation of Johnston's development business.

Only Steelcase voted to reject Johnston's plan of reorganization. Steelcase objected that the plan improperly placed similar unsecured claims in separate classes and also violated the absolute priority rule. Specifically, Steelcase argued that its claim should have been classified in either Class 19, Class 20, or Class 22, but not separately in Class 23.[6]

The bankruptcy court confirmed the Johnston plan over Steelcase's objections. The separate classification of Steelcase in Class 23 was deemed proper under 11 U.S.C. § 1122(a) because Steelcase was considered to be situated differently from all other unsecured creditors. In confirming Johnston's plan, the bankruptcy court also found that the absolute priority rule was not violated because Johnston's plan proposed to pay all claims in full, plus interest. The bankruptcy court also found, *inter alia,* that the value of the debtor's assets substantially exceeded the amount of the debtor's liabilities, and that the plan of reorganization was feasible.

The BAP agreed with the bankruptcy court that Steelcase's separate classification was in compliance with the requirements of § 1122(a), because as the bankruptcy court found, Steelcase was situated differently from other creditors, and also because the separate classification of Steelcase's claim had not been proposed to manipulate the vote of an impaired class of claims. 140 B.R. 526. The BAP also determined that the absolute priority rule was not violated. Accordingly, the BAP affirmed the bankruptcy court's July 19, 1991 order confirming Johnston's reorganization plan.

## II.

The bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. The BAP's jurisdiction to hear the appeal of the bankruptcy court's order of July 19, 1991 was under 28 U.S.C. §§ 158(a) and (b)(1). Our jurisdiction over this timely appeal of the BAP's amended order affirming the order of the bankruptcy court vests pursuant to 28 U.S.C. § 158(d).

We review *de novo* all decisions of bankruptcy appellate panels in cases brought before us pursuant to 28 U.S.C. § 158(d). *In re Bonner Mall Partnership,* 2 F.3d 899, 903–904 n. 10 (9th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 648 (1994). This is so because both the BAP and the court of appeals apply the same standard of review to the underlying judgment of the bankruptcy court. *In re Windmill Farms, Inc.,* 841 F.2d 1467, 1469 (9th Cir.1988). Consequently, we evaluate the bankruptcy court's findings of fact under the clearly erroneous standard and review its conclusions of law *de novo. Id.*

## III.

Steelcase contends that its separate classification under the Johnston plan violates 11 U.S.C. § 1122(a) because its claim is substantially similar to those of other unsecured creditors. The bankruptcy court rejected this claim, finding that Steelcase's separate classification was justified because: (1) Steelcase alone, of all creditors, holds a security in the assets of COS, thereby creating different rights; (2) Steelcase's claim is currently being litigated, which may confer rights separate from all other unsecured creditors, and (3) if Steelcase is entitled to payment as a result of the litigation with Johnston, Steelcase could be fully paid before other unsecured creditors. The BAP, pursuant to its *de novo* review, affirmed the bankruptcy court's findings that the classification of Steelcase's claim in Class 23 was proper and in compliance with § 1122(a).

---

**6.** Class 19 is comprised of disputed unsecured claims secured by valid, perfected liens against property of COS; Class 20 is comprised of unsecured claims based on guarantor liability, and Class 22 is comprised of unsecured claims for which Johnston is solely responsible.

### A.

Before turning our attention to the merits of Steelcase's argument, we must decide whether the BAP applied the proper standard of review in assessing the propriety under § 1122(a) of the Johnston plan's classification of claims. Following the Fifth Circuit in *In re Greystone III Joint Venture*, 948 F.2d 134, 141 n. 7, *as amended following reh'g en banc*, 995 F.2d 1274, 1281 n. 7 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992), the BAP concluded that: "Issues such as similarity in priority and legal attributes and the necessity for treatment in separate classes are legal issues reviewable *de novo*. Whether there are any good business reasons to support the debtor's separate classification of claims is a question of fact." BAP Op. at 3. Counsel for Steelcase also cites *Greystone* to support its position that the bankruptcy court's findings, as affirmed by the BAP, are reviewable *de novo*, and not simply for clear error. We cannot agree.

The Fifth Circuit standard, as applied by the BAP and urged by Steelcase, is apparently in conflict with this court's jurisprudence. We have held that the question of whether claims are "substantially similar" within the meaning of § 1122(a) is a question of fact, and thus reviewable under the clearly erroneous standard. *In re Commercial Western Fin. Corp.*, 761 F.2d 1329, 1334 (9th Cir.1985). The Fifth Circuit has evidently taken a different approach. In *Greystone*, it suggested that the clearly erroneous standard applies only where the issue is whether the bankruptcy court properly *denied* separate classification, *see e.g., Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1312 (8th Cir.1987), while the issue of a bankruptcy court's *approval* of a separate classification "is an issue of law, freely reviewable on appeal." 995 F.2d at 1279 n. 5. In our view, this is a distinction without meaning.

■ Whether the issue on appeal is denial of separate classification or approval of separate classification, the question resolved by the bankruptcy court is the same: are the claims substantially similar? To resolve that question, bankruptcy court judges must evaluate the nature of each claim, i.e., the kind, species, or character of each category of claims. *Cf. In re Los Angeles Land and Invs., Ltd.*, 282 F.Supp. 448, 454 (D.Haw. 1968) (interpreting analogous provision of former Bankruptcy Act to require consideration of "nature" of claim not as that word is intended in its "technical sense in law but [as it] is used in its ordinary common vernacular"), *aff'd*, 447 F.2d 1366, 1367 (9th Cir. 1971). We held in *In re Commercial Western*, 761 F.2d at 1334, that whether a note and deed of trust securing one claim is different from a note and deed of trust securing another claim is a question of fact. Whether a claim is secured, partially secured, or unsecured, is, in our view, also a question of fact. So, too, are the questions of whether one claimant alone holds a secured or partially secured claim; whether a particular claim [of many] is the subject of litigation; and whether pending litigation could result in full payment of the claim in issue prior to the time that other claims of other creditors are paid.

■ We are also satisfied that bankruptcy court judges must have discretionary power in classifying claims under § 1122(a). *Id.; cf. In re Palisades–On–The–Desplaines*, 89 F.2d 214, 217 (7th Cir.1937) (noting that Congress intended to give the court "broad latitude" in classifying claims under analogous provision of former Bankruptcy Act); *accord In re Los Angeles Land and Invs.*, 282 F.Supp. at 453. We thus reaffirm our rule that a bankruptcy court's finding that a claim is or is not substantially similar to other claims, constitutes a finding of fact reviewable under the clearly erroneous standard. *In re Commercial Western*, 761 F.2d at 1334; *cf. Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1312 (8th Cir.1987) (reviewing bankruptcy court's denial of motion for reclassification under clearly erroneous standard).

### B.

■ Having decided the proper standard for reviewing the bankruptcy court's determination that Steelcase's claim was *not* substantially similar to those of other unsecured creditors, we cannot say that this finding was

clearly erroneous. Steelcase *is* situated differently from other unsecured creditors.

Steelcase does not dispute that its claim, unlike all others, is partially secured by collateral of COS, the primary obligor. Steelcase must also concede that it, unlike all other unsecured creditors, is embroiled in litigation with Johnston, and that its claim thus may be offset or exceeded by Johnston's own claim against Steelcase. Steelcase cannot deny the possibility, if not necessarily the probability, that, if successful in the litigation, it could be paid in full before all other unsecured creditors. Under these circumstances, the bankruptcy court was not clearly erroneous in concluding that Steelcase's claim is distinguishable from Class 19, Class 20, and Class 22 claims.

Steelcase, however, argues that the factors cited by the bankruptcy court are not legally cognizable reasons for separate classification under § 1122(a), and that the BAP therefore erred in affirming the order of the bankruptcy court which approved the separate classification. We reject this argument. Steelcase's separate classification under the Johnston plan does not violate § 1122(a) because the legal character of its claim is *not* "substantially similar to the other claims or interests of such class[es]." 11 U.S.C. § 1122(a). *Cf. In re Los Angeles Land and Invs.*, 282 F.Supp. at 453–54 (separate classifications of unsecured creditors justified "where the legal character of their claims is such as to accord them a status different from the other unsecured creditors"); *accord Granada Wines v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42, 46 (1st Cir.1984). This is so because, as we have already stated, the bankruptcy court did not commit clear error in finding that Steelcase was the only unsecured creditor whose claim is currently being litigated. Moreover, Steelcase, unlike other unsecured claimants, holds a partially secured interest in COS, thereby according Steelcase a different status than Class 19, Class 20, and Class 22 claimants.

Nor do we find any merit to Steelcase's argument that its separate classification in Class 23 constitutes unfair and discriminatory treatment.[7] Steelcase apparently bases this argument on the requirements of 11 U.S.C. § 1129(b)(1).[8] That section of the Code prohibits unfair discrimination and requires that a plan for reorganization be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan." *Id.* The plan's classification scheme satisfies this requirement because, as indicated above, there were reasonable, nondiscriminatory reasons for it. The Johnston plan, as confirmed by the bankruptcy court and affirmed by the BAP, satisfies that requirement.

In light of our standards concerning classification schemes, the bankruptcy court correctly confirmed Steelcase's classification as a Class 23 claimant under the Johnston plan of reorganization, and, accordingly, the BAP correctly affirmed the bankruptcy court's order to that effect.

### IV.

Irrespective of the separate classification issue, Steelcase argues that Johnston's reorganization plan should not have been confirmed because the plan violates the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B). The bankruptcy court and the BAP both rejected this argument. We

---

**7.** The reorganization plan in this case requires Johnston to establish a second reserve account for all unsecured creditors, with 25% of the amount in reserve, or up to approximately $100,000, held in reserve for Steelcase, pending disposition of the civil litigation. This account is to be funded from a portion of the net proceeds generated through the sale or refinance of several of Johnston's real estate and investment holdings. If the properties are transferred, up to $1 million must be held for Steelcase's benefit pending resolution of its civil litigation with Johnston. Steelcase complains that the maximum $1.1 million reserve amount constitutes protection for only 58% of its $1,913,058.90–plus claim, while other unsecured creditors are paid on an ongoing basis or with an 80% protective cushion. Although Steelcase is treated differently from other unsecured creditors, there is no evidence of record that Steelcase is treated unfairly under Johnston's plan. As Johnston points out, Steelcase will be paid in full under the plan, and, if Steelcase is successful in its litigation with Johnston, Steelcase will be paid within 120 days following entry of a judgment in its favor.

**8.** *See, infra,* note 10, for text of 11 U.S.C. § 1129(b)(1).

review conclusions of law *de novo.* *Windmill Farms,* 841 F.2d at 1469.

■ The absolute priority rule comes into play in the "cramdown" situation evident here; that is, where the court confirms a reorganization plan over the objections of a class or classes of unsecured creditors—or, in bankruptcy parlance, where the plan is crammed down the throats of the objecting class[es]—because the plan "does not discriminate unfairly, and is fair and equitable" to each dissenting class. *See* 11 U.S.C. § 1129(b)(1).[9] The two-part codification of the judicially-created absolute priority rule, at § 1129(b)(2)(B), provides that a plan's treatment of a dissenting class of unsecured creditors is "fair and equitable" only if:

> (B) With respect to a class of unsecured claims—
>
> > (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; *or*
> >
> > (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

(emphasis added).

Steelcase asserts that "the reality that the Debtor's Plan is truly a liquidating one gives rise to the problem with the absolute priority rule." Steelcase Opening Brief at 29. Essentially, Steelcase's argument is that the absolute priority rule is violated because Johnston is allowed to retain all rights in estate property and to use estate assets of up to $50,000 per month for living expenses before Steelcase receives payment of any kind on its claim. In other words, Steel-

case's fundamental concern is that Johnston will deplete the assets of the estate before Steelcase is paid in full. We need not dwell long on this argument for we find Steelcase's failure to challenge the relevant findings of the bankruptcy court and feasibility of Johnston's reorganization plan dispositive of the issue.

The statute requires that no junior class may collect under a plan of reorganization *unless* each unsecured claimant "receive[s] or retain(s) on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim ....." *See* §§ 1129(b)(2)(B)(i) and (ii); *In re Bonner Mall,* 2 F.3d at 906. Because § 1129(b)(2)(B) clearly contemplates a present-value analysis that will discount value to be received in the future, *see* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 413 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6369, the requirements of the statutory rule would appear to be met so long as there is an unchallenged finding that the present value is sufficient to provide for full payment of the senior creditors.

In confirming the Johnston plan of reorganization, the bankruptcy court found that:

> 13. The Plan proposes to pay all claims in full, plus interest.
>
> 14. The value of the Debtor's assets substantially exceeds the amount of the Debtor's liabilities.
>
> 15. The Debtor is more likely than not to perform his plan, obligations.
>
> 16. The Plan is feasible.

Bankruptcy Ct.Op. at 4. These findings of the bankruptcy court are equivalent to a determination that the present value of the Johnston assets are sufficient to pay all debts in full. That uncontested determination sat-

---

9. 11 U.S.C. § 1129(b)(1) provides that if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.

Subsection (a) defines "fair and equitable" as including several enumerated requirements. *See* 11 U.S.C. §§ 1129(a)(1) through (13). The requirements of paragraph (8)—expressly excluded from the cramdown provision of § 1129(b)(1)—are that "[w]ith respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan." *Id.* § 1129(a)(8).

isfies the literal requirements of § 1129(b)(2)(B).

Steelcase never appealed the feasibility determination of the bankruptcy court. Nor had it challenged the findings recited above. Thus, we agree with the BAP that the question of "[w]hether the [bankruptcy] court clearly erred in finding that the estate would have sufficient funds to pay Steelcase the full amount of its claim is not at issue." Bankruptcy Op. at 9. For this reason, Steelcase cannot now be heard to complain that senior creditors will not be fully paid from the estate's present valued assets.

Although we agree with the BAP's conclusion, we nevertheless decline to read *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988), as the BAP evidently read it. Relying on language in *Ahlers,* the BAP determined that § 1129(b)(2)(B)(ii) does not prohibit a junior class from receiving property of the estate before a senior class is *paid* —just so long as the senior class is *provided for* in the plan. The term "provided for," as used in the BAP opinion, is given no particular content or definition. More significantly, it does not appear to require full present payment, or its equivalent, to senior creditors before payments may be made to junior creditors, including, of course, the debtor.

Our reading of the *Ahlers* opinion, although it is not expressly stated therein, leads us to conclude that a bankruptcy court must be satisfied by its findings that the senior claimants will be paid in full before those junior to them may receive or retain property under a Chapter 11 plan. While it is true that the facts in *Ahlers* differ markedly from the circumstances here, the teaching of *Ahlers* in respect to the requirements of the "absolute priority" rule is unmistakable— and it is that teaching that informs our conclusion here.

The Ahlers operated a failing family farm, and ultimately defaulted on their loan payment to the Norwest Bank Worthington. Norwest sought to replevin farm equipment pledged as security, but was prevented from doing so by the bankruptcy court wherein Ahlers had filed a petition for reorganization under Chapter 11 of the Bankruptcy Act. Although the district court rejected Ahlers' plan as "unfeasible," the Eighth Circuit Court of Appeals reversed. In reversing, the Eighth Circuit rejected Norwest's argument that Ahlers' plan, by permitting Ahlers to retain an interest in the farm property, violated the absolute priority rule and barred confirmation. The Court of Appeals held that the absolute priority rule

> did not bar [the Ahlers] from retaining their equity interest in the farm if they contributed 'money or money's worth' to the reorganized enterprise. It further concluded that [Ahlers'] 'yearly contributions of labor, experience and expertise' would constitute a contribution of 'money or money's worth,' and therefore would permit confirmation of a reorganization plan....

*Ahlers,* 485 U.S. at 201, 108 S.Ct. at 966.

The Supreme Court reversed, holding among other things, that "[u]nlike 'money or money's worth,' a promise of future services cannot be exchanged in any market for something of value to creditors *today.*" *Id.* at 204, 108 S.Ct. at 967.

■ Thus, while *Ahlers* does not explicitly address the issue before us, i.e., whether a dissenting class must actually be paid in full before a junior class can receive any asset from the estate, we glean from its holding and its discussion of Congress' intent that provision for full present payment to senior creditors is required before payments to junior creditors may be permitted.[10] Must the

---

10. We note that the Seventh Circuit has also read *Ahlers* as we do, i.e., to require "that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan." *In re Snyder,* 967 F.2d 1126, 1128 (7th Cir.1992). We observe that other courts of appeal have stated, albeit without particular analysis, that a senior class must be *paid* in full before

a junior class can retain any estate property. *See, e.g., In re Bryson Properties, XVIII,* 961 F.2d 496, 503 (4th Cir.) (suggesting that senior class of unsecured creditors must be "paid in full" before junior classes can retain property under reorganization plan), *cert. denied,* — U.S. —, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *Kham & Nate's Shoes No. 2 v. First Bank,* 908 F.2d 1351, 1359–60 (7th Cir.1990) (describing absolute pri-

money be in hand at the date of confirmation to satisfy the absolute priority rule? We think not, so long as its provision is established by uncontested findings of the bankruptcy court which are not clearly erroneous, and which "provide for" such payments in accordance with the feasible confirmed plan.

To the extent that the BAP read *Ahlers'* "provided for" language as not to require full payment to Steelcase before payments to junior creditors, we must disagree. In our opinion, absolute priority is not so elastic a concept as to embrace any provision which falls short of the standard which we have announced and which we reiterate here: before the holder of a junior claim, which, of course, must include the debtor itself, can receive or retain property of the estate, a bankruptcy court must be satisfied that each unsecured senior claimant actually will receive full present payment, or its equivalent, under the plan of reorganization.

█ Here, the bankruptcy court's uncontested findings that all claims will be paid in full plus interest; that the value of Johnston's assets substantially exceeds the amount of Johnston's liabilities; that Johnston is more likely than not to perform his plan obligations; and that the plan is feasible; ensuring that unsecured creditors of the estate will be paid in full with interest, assures that the requirements of the absolute priority rule are met. Absent such findings, which, as we stated, are here tantamount to actual payment, we could not hold that senior class members were "provided for" by the Johnston plan. Hence, we hold that the § 1129(b)(2)(B) requirement of absolute priority has been satisfied, and has not been violated by permitting Johnston under the plan to retain rights in the estate property.

## V.

For the reasons which we have discussed, we will affirm the June 1, 1992 amended order of the BAP affirming the bankruptcy court's July 19, 1991 order confirming Johnston's second amended plan of reorganization.

**AFFIRMED.**

---

ority rule as requiring that "every cent of each class comes ahead of the first dollar of any junior class" and class of unsecured creditors must be "paid in full" before any junior class); *Justice v. Carter,* 972 F.2d 951, 954 (8th Cir.1992) (defining absolute priority rule to bar any junior equity interest "until the unsecured creditors are paid in full under the reorganization plan").

Nor was the issue that concerns us here discussed in our recent opinion in *In re Bonner Mall Partnership,* 2 F.3d 899 (9th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 648 (1994), and the absolute priority rule was not analyzed in the context of whether a junior class may receive any property of the estate before senior class claims are actually paid. *See id.* at 908–911.