**In re BALDWIN PARK TOWNE CENTER, LTD., A California limited partnership, Debtor.**

**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, Movant,**

**v.**

**BALDWIN PARK TOWNE CENTER, LTD., A California limited partnership, Respondent.**

**Bankruptcy No. SA 94–11492 JR.**

United States Bankruptcy Court, C.D. California.

Aug. 2, 1994.

As Amended Sept. 1, 1994.

Reed S. Waddell and Craig A. Barbarosh of Pillsbury Madison & Sutro, Los Angeles, CA, for movant.

Jeffrey W. Broker and Paul J. Couchot of Lobel, Winthrop & Broker, Irvine, CA, for debtor/respondent.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Principal Mutual Life Insurance Company ("Principal") seeks relief from the automatic stay to execute on its lien on the principal asset of Baldwin Park Towne Center, Ltd. ("Debtor"), a commercial retail shopping center (the "Property"). Principal contends that Debtor's reorganization plan (the "Plan") must classify the unsecured portion of its claim (the "Deficiency Claim") with the claims of other general unsecured claims (the "Trade Claims"). The Plan classifies the Deficiency Claim separately from the Trade Claims. If the Deficiency and Trade Claims were combined into the same class, Principal would have a veto power over the Plan. The issue of classification of a deficiency claim in a single asset real estate case has generated substantial controversy lately. Because the law is unsettled on this issue, I took the matter under submission for review prior to the final hearing.

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (1994) (the district courts shall have original and exclusive jurisdiction of all cases under title 11), 28 U.S.C. § 157(a) (1994) (authorizing the district courts to refer all title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) (1994).

1. Debtor disputes Principal's numbers and claims that it owes $21,044,000 on the Note. I need not determine the actual amount of Principal's deficiency claim at this time.

2. Code § 506(a) provides in relevant part:
   An allowed claim of a creditor secured by a lien on property in which the estate has an

## FACTS

On August 12, 1988, Principal recorded a first priority deed of trust and an assignment of rents against the Property (the "Deed of Trust"). The Deed of Trust secured a promissory note in the amount of $21,500,000 (the "Note"). On November 1, 1993, Debtor failed to make its scheduled payment on the Note. Principal agreed to forbear from exercising its rights under the Note and Deed of Trust through February 1, 1994.

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 14, 1994 (the "Petition Date"). On June 3, 1994, Principal filed its motion for relief from the automatic stay. On June 10, 1994, Debtor filed the Plan and its disclosure statement.

Principal alleges that the debt on the Note is approximately $23,300,000.[1] On May 12, 1994, I determined that the value of the Property, and thus the secured portion of Debtor's claim, was $16,000,000 (the "Secured Claim"). The Deficiency Claim, therefore, is approximately $7,300,000.[2]

The Plan places the Deficiency and Trade Claims in different classes. The Trade Claims are to be paid in full 30 days after the effective date of the Plan, while Principal will receive $250,000 in payment of the Deficiency Claim, payable on the effective date of the Plan. The balance of the Deficiency Claim will then be "conditionally" discharged. That is, when Principal's secured claim is paid in full, the remainder of the Deficiency Claim will be discharged; in the event of a default in payments on Principal's allowed claim, the full amount of the Deficiency Claim will constitute an obligation of Debtor to Principal.

## DISCUSSION

Under Code § 362(d)(2), relief from the automatic stay is granted if a debtor has no equity in the property and the property is

interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

not necessary for an effective reorganization.[3] In *United Savings Ass'n. v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Supreme Court held that property is necessary for an effective reorganization if there is "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 376, 108 S.Ct. at 633 (quoting *United Savings Ass'n. v. Timbers of Inwood Forest*, 808 F.2d 363, 370–71 (5th Cir.1987)).

Debtor has no equity in the Property. Additionally, if the Deficiency and Trade Claims are classified together, Principal has a veto power over the Plan,[4] and Debtor has no realistic chance of confirming the Plan.

█ Code § 1122 governs the issue of the classification of claims and provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Section 1122 does not require that similar claims be classified together. *Matter of Woodbrook Associates*, 19 F.3d 312, 318 (7th Cir.1994); *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 585 (6th Cir.1986); *In re SM 104 Ltd.*, 160 B.R. 202, 216 (Bankr.S.D.Fla.1993). Most courts, however, agree that there must be some limits on a debtor's right to classify similar claims. The "one clear rule" as expressed in *Matter of Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir.1991), is "thou shall not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Id.* at 1279. This view stems from "notions of basic fairness and good faith." *SM 104*, 160 B.R. at 217.

Most courts have looked to see if there is some business or economic reason independent of the debtor's need to separately classify the deficiency claim in order to confirm its plan. *In re Boston Post Road Ltd. Partnership*, 21 F.3d 477, 483 (2nd Cir.1994); *In re Johnston*, 21 F.3d 323, 328 (9th Cir.1994); *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 898 (9th Cir. BAP 1994); *In re Moorpark Adventure*, 161 B.R. 254, 257 (Bankr.C.D.Cal. 1993). For example, the debtor often argues that its relationships with its trade creditors are very important to its ongoing business. The problem is that the courts rarely find sufficient evidence to support this assertion.

In *Johnston*, the Ninth Circuit Court of Appeals directly addressed the classification issue under § 1122(a). The debtor's plan separated the Steelcase claim from other unsecured claims. The Steelcase claim was in dispute. The plan provided that payment to Steelcase was contingent on the outcome of the litigation, while the other unsecured claims would be paid in full through monthly payments. Steelcase voted against the plan, and the bankruptcy court confirmed the plan over Steelcase's objection. Steelcase asserted that separate classification of its claim was improper. The bankruptcy court rejected

---

**3.** Code § 362(d)(2) provides in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

. . . . .

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

**4.** Code § 1126(c) provides in relevant part:

A class of claims has accepted a plan if such plan has been accepted by creditors ... that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors ... that have accepted or rejected such plan.

The Plan includes only three classes of impaired creditors: Principal's secured claim, the Deficiency Claim, and the Trade Claims. If the Deficiency Claim is lumped with the Trade Claims, the $111,890.17 in Trade Claims would be overwhelmed by the Deficiency Claim and Principal would be able to prevent the class from satisfying the two-thirds in amount requirement for acceptance of the Plan. Without the approval of an impaired class, § 1129(a)(10) would not be satisfied.

this assertion, holding that the separate classification was justified because: (1) Steelcase held a security interest from the majority shareholder of the debtor to secure its claim; (2) Steelcase's claim was contested; and (3) if Steelcase succeeded in the litigation, it could be paid ahead of other unsecured creditors. 21 F.3d at 326.

The Court of Appeals defined the issue as whether the claims are substantially similar. *Id.* at 327. To resolve the issue, the bankruptcy court must evaluate "the nature of each claim, i.e., the kind, species, or character of each category of claims." *Id.* The court also affirmed that bankruptcy judges must have wide latitude in classifying claims under § 1122(a). *Id.* With this in mind, the court reaffirmed that a bankruptcy court's determination that a claim is or is not substantially similar to other claims is a question of fact. *Id.* Applying this standard, the court did not find the bankruptcy court's separate classification of Steelcase's claim clearly erroneous. *Id.* at 328.

I begin by disagreeing with the *Greystone* approach to classification. It places an unfair burden on the debtor to prove a negative. The debtor has to show that it has a reason for the separate classification of the deficiency claim independent of its need to get an affirmative vote of an impaired class for confirmation. This creates a bias against the debtor that is not specified in the Code. *See* Jeffrey C. Krause, *The Bias of the Courts Against Single–Asset Real Estate Cases is Creating Bad Law in the Area of Classification,* 22 Cal.Bankr.J. 47 (1994). This issue, however, has been addressed by the Bankruptcy Appellate Panel ("BAP") in the *Tucson* decision, and for the time being I must place this burden on Debtor. As the BAP stated in *Tucson,* "[i]n the case before us, Tucson and PLF have offered no business or economic justification for the separate classification of the unsecured claims.... The claims are otherwise similarly situated to the general unsecured claims in every other respect. Therefore, Tucson separately classified the PLF claim for the sole purpose of gerrymandering an accepting class in violation of 1129(a)." 166 B.R. at 898.

This misplaced presumption has its genesis in the view that separate classification somehow disenfranchises the undersecured creditor as if the Code gives the undersecured creditor a veto right over a debtor's plan because of the magnitude of its claim. *Greystone,* 995 F.2d at 1280. This ignores the protections built into the Code by Congress under § 1129(b), which require that the plan not discriminate unfairly and be fair and equitable. It is unclear to me why the courts have to fashion some additional protections for the undersecured creditor. Certainly, these additional protections are not spelled out in the Code for all to see.

■ Since under *Tucson* I must view the classification of the Deficiency Claim without additional justification to be a violation of § 1129, I shall turn to Debtor's evidence regarding the differences between the Deficiency Claim and the Trade Claims that justifies this separate classification. Based on the facts here, the Deficiency Claim is not the same "species" of unsecured debt as the Trade Claims. This is true for the following reasons: (1) Principal is provided the full value of its secured claim; (2) Principal is given recourse on its claim under § 1111(b)(1)(A), which is contrary to state law; (3) Debtor must pay the Trade Claims in full in order to satisfy § 1129(a)(7), the "best interests of creditors test," while § 1129(a)(7) does not require any payment to Principal on the Deficiency Claim; (4) in a Chapter 7 case and under state law, holders of the Trade Claims can seek payment from all the assets of Debtor, while Principal is limited to recovery from the Property; (5) holders of the Trade Claims can pursue the general partner for recovery, while Principal has recourse only against the Property; and (6) Principal has a right to treat the Deficiency Claim as fully secured under § 1111(b)(2). Accordingly, based on my evaluation of the nature, kind, species and character of the Deficiency and Trade Claims, I find the Deficiency Claim substantially different from the Trade Claims. Since they are substantially different, they not only should, but must, be classified separately.

As the *Woodbrook* court stated, "[s]ignificant disparities do exist between the legal

rights of the holder of a § 1111(b) claim and the holder of a general unsecured claim which render the two claims not substantially similar and which preclude the two from being classified together under 1122(a)." *Id.* at 318.

Even if they are not substantially different under the facts of this case, the separate classification is justified given this court's broad discretionary power in classifying claims under § 1122(a). *Johnston,* 21 F.3d at 327.

How does one then properly address the concern that the holder of a deficiency claim is being treated unfairly? I believe the fairness question should be reviewed when applying § 1129(b), including the "unfair discrimination" and "fair and equitable" tests. I view these tests as providing both horizontal and vertical protections for creditor classes. For example, the "unfair discrimination" requirement prevents a debtor from discriminating unfairly between classes having equal priority. Here, Debtor seeks to pay Principal $250,000 on the Deficiency Claim (approximately 4%) while paying the Trade Claim creditors in full. On its face, this seems unfair, especially when Debtor seeks to benefit from any appreciation in the value of the Property at Principal's expense. At the confirmation hearing, I must make a specific finding that the Plan does not unfairly discriminate against Principal. Additionally, the "fair and equitable" requirement incorporates the "absolute priority rule" that mandates full payment to unsecured creditor classes who reject the plan before a debtor's owners can retain anything. However, the "new value exception" allows a debtor's owners to retain their interest to the extent new value is put into the debtor. Here, Debtor's owners intend to invest $660,000 in new money to retain their interests in Debtor. In *In re Bonner Mall Partnership,* 2 F.3d 899, 918 (9th Cir.1993), the Ninth Circuit upheld the applicability of the new value exception and specified that the equity must be (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value or interest received. *Id.* at 908. The new value, therefore, must be substantial and consti-

tute reasonably equivalent value. Is an investment of $660,000 to purchase Property valued at $16,000,000 substantial when the debt on the Property equals its value? Does this investment constitute reasonably equivalent value? In other words, assuming an outside investor had the opportunity to purchase the upside potential of the Property, what range of value would that investor place on that investment opportunity? These § 1129(b) issues are best left to the plan confirmation hearing. The plan process encourages a debtor and its creditors to negotiate a consensual plan. This process normally extends right up to and even during the plan confirmation hearing. This process should be encouraged, not discouraged by creating an unwarranted classification barrier that kills the case at an early stage. At the confirmation hearing, all relevant evidence can be considered to resolve these fairness issues, and the court can make the necessary findings regarding confirmation in accordance with § 1129.

To summarize, the Code presently has adequate means for addressing the "fairness" issues when an impaired class rejects its treatment under a plan. Courts need not do injustice to the statutory language of the Code by imposing on a debtor additional obligations that are not contained in § 1129.

██ ˙Debtor should be given the opportunity to make appropriate adjustments to the Plan to address these fairness concerns. This case is less than six months old. Debtor, therefore, has a reasonable likelihood of presenting a plan that has a reasonable opportunity for success within a reasonable period of time. Accordingly, Principal has not met its burden under § 362(d)(2) to show that the Property is not necessary for an effective reorganization.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This Memorandum Opinion shall constitute my findings of fact and conclusions of law.