In re MONTCLAIR RETAIL
CENTER, L.P., Debtor.

MONTCLAIR RETAIL CENTER,
L.P., Appellant,

v.

BANK OF THE WEST, Appellee.

BAP No. CC–94–1444–MeVHa.

Bankruptcy No. SB 93–22238.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Nov. 17, 1994.

Decided Feb. 3, 1995.

Lloyd M. Segal, Los Angeles, CA, for appellant.

James A. Tiemstra, Oakland, CA, for appellee.

Before MEYERS, VOLINN and HAGAN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

### FACTS

Eli Sasson ("Sasson") obtained a $3.8 million recourse loan from Bank of the West ("Bank") in 1991. Sasson used the funds to construct a commercial shopping center in Montclair, California ("Property"). Early in 1992, Sasson defaulted on the loan and the Bank commenced a non-judicial foreclosure. The parties agreed to several continuances; however, by March 1993, the Bank refused any further extensions. On April 8, 1993, Sasson transferred the Property to Montclair Retail Center, L.P. ("Montclair"). Sasson controls the general partner of Montclair, Montclair Plaza Investors, Inc., and is also the limited partner. On August 18, 1993, Montclair filed for protection under Chapter 11 of the Bankruptcy Code ("Code").

Montclair filed a motion to use cash collateral ("Cash Collateral Motion") which was heard on September 9, 1993. The court allowed the use of cash collateral and continued the matter to October 14, 1993 for a final hearing. In September 1993, the Bank filed its motion for relief from the automatic stay ("Stay Relief Motion"). This matter was first heard on October 14, 1993. At the October 14 hearing, the court permitted the continued use of cash collateral. The court also ordered Montclair to file a plan of reorganization by December 17, 1993, and continued the Stay Relief Motion to December 23, 1993.

Montclair filed a plan and disclosure statement and obtained a hearing date of February 15, 1994. The court continued the Stay Relief Motion to February 15, 1994. On that date, the court concluded that the disclosure statement was inadequate, but continued all matters until March 22, 1994 (including the still pending Cash Collateral Motion), so that Montclair could file an amended plan and disclosure statement.

Prior to the February hearing, the parties had filed conflicting appraisals. The Bank's appraisal of the property showed a value of $3,000,000 for the Property, while Montclair's appraisal was for $3,900,000. The Bank was owed $3,900,000 or more. The court instructed the Bank to select what the Bank believed to be an appropriate value in the $3,000,000 to $3,900,000 range prior to the March hearing. Then, using that value, the Bank would make its decision regarding its Code Section 1111(b) election. This valuation was only for confirmation purposes. Montclair did not object to this procedure. Prior to the March hearing, the Bank filed a notice of value listing the Property at $3,000,-000. The Bank also elected not to be treated as fully secured pursuant to Section 1111(b)(2). This meant that the Bank would have an unsecured claim of at least $900,000.

Montclair filed an amended disclosure statement ("Disclosure Statement") and plan ("Plan") on March 18, 1994. The Plan placed the Bank's secured claim in class 2 and its unsecured claim in class 3. Montclair then put the remaining unsecured claims, estimated to be $50,000, in class 4. Classes 3 and 4 were to receive the same treatment.

At the March 22, 1994 hearing, the court concluded that: the Disclosure Statement was still inadequate; Montclair was improperly trying to place the Bank's unsecured claim in a class separate from the other unsecured creditors; Montclair could not confirm a plan without an infusion of funds from Sasson; and stay relief should be granted to the Bank, although Montclair could seek to reimpose the stay if it was to receive a firmer financial commitment from Sasson. The order granting relief from stay was entered on April 4, 1994. Montclair appealed.

### II

### STANDARD OF REVIEW

Orders granting relief from stay are reviewed for an abuse of discretion. *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986). Whether claims are substantially

similar for purposes of Section 1122 is a question of fact which the Panel reviews under the clearly erroneous standard. *In re Johnston,* 21 F.3d 323, 327 (9th Cir.1994).

## III

## DISCUSSION

Montclair argues that in denying approval of Montclair's disclosure statement, the court erred by not allowing it to separately classify the Bank's deficiency claim. Montclair also contends that it should have been allowed to treat the Bank as fully secured. Finally, Montclair claims that the court abused its discretion in granting stay relief without a subsequent evidentiary hearing.

In its Stay Relief Motion, the Bank contended that the debtor did not have any equity in the Property and the Property was not necessary for a reorganization pursuant to Section 362(d)(2). The parties stipulated to the Bank's valuation of $3,000,000 for the Property. Since the Bank's claim was in excess of that amount, it is clear Montclair did not have any equity in the Property.[1] The remaining determination, whether the Property was necessary for Montclair's reorganization, depended on whether Montclair had a reasonable possibility of a successful reorganization within a reasonable period of time. *United Savings Assn. v. Timbers of Inwood Forest,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988).

■ Montclair's Plan proposed to separately classify the Bank's deficiency claim from those of other unsecured creditors. The court found that Montclair had not shown a sufficient basis for separate classification. Furthermore, the court ruled that with the Bank in the same class as the other unsecured creditors there would be no impaired consenting class necessary for confirmation. The court concluded that a confirmable plan was not a prospect.

Montclair argues that it should have been allowed to separately classify the Bank's claim. Section 1122(a) provides that only claims which are substantially similar may be classified together. Although Section 1122(a) does not require all substantially similar claims to be placed in the same class, courts have held that the debtor cannot use the classification process for the purpose of creating an impaired, assenting class of claims. *In re Greystone III Joint Venture,* 995 F.2d 1274, 1279 (5th Cir.1991). There must be a reasonable, nondiscriminatory reason for the separate classification. *Johnston, supra,* 21 F.3d at 328. The debtor must offer a business or economic justification for the separate classification, or show a legal distinction between the claims. *See In re Tucson Self-Storage, Inc.,* 166 B.R. 892, 898 (9th Cir. BAP 1994).

Montclair argues that it did show reasonable business reasons justifying the classification, the same reasons which supported separate classification in *Johnston.* Montclair states that the Bank is the only creditor whose claim is partially secured, and the only creditor with pending litigation against the debtor. Montclair misunderstands *Johnston.* In *Johnston,* the creditor was not merely partially secured, it was secured by assets owned by an entity separate from the debtor. Furthermore, the validity of the creditor's claim was being litigated. The litigation in this case is simply the non-judicial foreclosure brought by the Bank. The validity of the Bank's claim is not in dispute. Moreover, in *Johnston,* the debtor proposed to treat this creditor differently than others. The debtor was able to show that the creditor's lien and the litigation justified this different treatment, and with it, the separate classification. On the other hand, Montclair's Plan proposed to treat the Bank's unsecured claim exactly the same as the general unsecured claims. This shows that there was no business or economic justification for the separate classification.

The bankruptcy court found that Montclair did not provide a sufficient basis for separately classifying the Bank's unsecured claim from the general unsecured claims. Montclair has failed to show that this finding was clearly erroneous.

Montclair contends that the Bank's deficiency claim and the general unsecured

---

1. Even using Montclair's valuation of $3,900,- 000, there would be no equity in the property.

claims are not substantially similar, citing *Matter of Woodbrook Associates,* 19 F.3d 312 (7th Cir.1994). Therefore, argues Montclair, Section 1122(a) does not allow the Bank's deficiency claim to be placed in the same class as the unsecured claims. The Panel has previously rejected this argument, stating "that the separate classification of unsecured claims solely on their right to make a § 1111(b)(2) election is an impermissible classification in violation of § 1122(a)." *In re Tucson Self-Storage, Inc., supra,* 166 B.R. at 897.

■ Montclair has two remaining arguments, neither of which have merit. It contends that it could have treated the Bank's claim as fully secured if the court had not improperly imposed the requirement that Montclair first provide additional collateral. Montclair has never explained how it could, on its own initiative, treat the Bank as fully secured. It is clear from the language of Section 1111(b)(2) that the election to be treated as fully secured is controlled solely by the creditor. The Bank opted to be able to assert its unsecured claim. There is nothing in the Code that would let Montclair override this election. The court was merely acknowledging this when, in response the Montclair's claim that it would treat the Bank as fully secured, it stated that Montclair would have to come up with additional security.

■ Finally, Montclair contends that at the February hearing, the court indicated that the hearing on March 22, 1994 would just be used as a holding date for the motion for relief from stay, with an evidentiary hearing to be set up soon thereafter if the disclosure statement were not approved.[2] Montclair contends that by granting relief without the promised further hearing, the court abused its discretion.

The transcript for the February 15, 1994 hearing shows the following exchange:

THE COURT: March 22, 1994, 11:00 a.m., is the continued hearing date on the disclosure statement. Will be the contin-

ued hearing date on cash collateral. It'll be the continued final hearing date, without witnesses holding final date on relief from stay. Do I have anything else with respect to this? It'll be the—I think that covers everything.

MR. TIEMSTRA: [counsel for the Bank] Well, Your Honor, we need to do something about—

THE COURT: The Court will require—

MR. TIEMSTRA: —cash collateral.

THE COURT: —the remaining adequate protection order to stay in full force and effect pending the hearing as the same orders previously given.

MR. SEGAL: [Montclair's counsel] Understood.

THE COURT: Okay. Same rules, Mr. Tiemstra.

MR. SEGAL: Notice waived on this?

THE COURT: If they fall apart, you get your relief immediately, just like I provided in the other order.

MR. TIEMSTRA: Okay.

Transcript, pages 82–83.

This exchange demonstrates that the court contemplated granting relief at the March 22, 1994 hearing, without a further hearing if appropriate. At that subsequent hearing, the court found that the disclosure statement was inadequate. Furthermore, it is clear the court believed that the debtor, by itself, did not have the financial wherewithal to put forth a successful plan. Montclair has not demonstrated that this was clearly erroneous. The court further found there was no equity in the Property. No additional hearings were necessary. The Stay Relief Motion had been pending for several months. Under all these circumstances, the court did not abuse its discretion when it granted the Bank's Stay Relief Motion.

## IV

## CONCLUSION

The court ruled that Montclair could not separately classify the Bank's unsecured

---

**2.** In its opening brief Montclair actually states that there was no motion for relief from stay

pending. This is clearly incorrect.

claim. The court did not commit reversible error in finding the Bank's unsecured claim was substantially similar to the general unsecured claims. It also did not err in finding that Montclair had not put forth a reasonable justification for the separate classification. Furthermore, Montclair has no authority for treating the Bank as fully secured since the Bank elected not to be so treated. Finally, the court did not abuse its discretion by granting stay relief without a further hearing.

**AFFIRMED.**