64 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HORTON GRAND SADDLERY HOTEL JOINT VENTURE, Plaintiff-Appellee,
v.
John ROSE, Defendant-Appellant.
 Nos. 94-56055, 94-56108.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1995.
Decided Aug. 22, 1995.
 
 1
 Before: BROWNING AND BEEZER, Circuit Judges, and HAGGERTY, District Judge.[1]
 
 MEMORANDUM[2]
 
 2
 There are two appeals in this case. John Rose, a limited partner in the Horton Grand Saddlery Hotel joint venture, appeals the ruling from the Bankruptcy Appellate Panel (BAP) affirming the bankruptcy court's findings that (1) he breached a fiduciary duty owed to the joint venture when he purchased the first deed of trust on the joint venture's property, and (2) accordingly, Rose could enforce the deed only to the extent of the purchase price he paid.
 
 
 3
 After affirming the substantive ruling of the bankruptcy court, the BAP reversed the bankruptcy court's decision to award attorney fees to the joint venture. The joint venture appeals that decision. We reverse the decision of the BAP regarding the breach of fiduciary duty claim, and affirm its decision regarding attorney fees.
 
 I.
 
 4
 The Horton Grand Saddlery Hotel was initially financed by an $8.1 million bond issued by Bank of America (B of A) in 1984, plus over $4 million from 150 limited partners. Rose invested $235,000 as a limited partner.
 
 
 5
 The hotel twice received additional financing. In October 1985 the Centre City Development Corporation ("CCDC"), a San Diego agency, lent the hotel $1.35 million. In late 1989, Rose personally lent the hotel $2 million.
 
 
 6
 The B of A loan was secured by a first deed of trust on the hotel. The CCDC loan was secured by a second deed of trust, and Rose held a third deed of trust.
 
 
 7
 The hotel experienced losses, and B of A issued a notice of default on March 7, 1991. That month, Dan Pearson, the joint venture's general partner, held a meeting at Rose's house to discuss the hotel's financial problems. Attending the meeting were Pearson, Rose, his wife Dori Rose, Azim Khamisa (a representative of the hotel), and Peter Davis, a San Diego banker who was found to be Rose's agent by the bankruptcy court.
 
 
 8
 Pearson scheduled regular meetings with these people on every Monday from March 1991 until November 1991. The purpose of these meetings was to discuss the hotel's financial difficulties.
 
 
 9
 In August 1991, Khamisa spoke with B of A vice president Satish Savkar. Savkar disclosed to Khamisa that B of A might be willing to sell its interest in the first deed of trust, then valued at $11 million, at a discounted price of $3 to $3.5 million. The bankruptcy court found that Rose learned of this discussion on September 4, 1991.
 
 
 10
 At the regularly scheduled Monday meeting on September 26, Khamisa presented a memo addressing the viability of offering $3.5 million to B of A for its interest. On September 29, Pearson transmitted an offer to B of A of $3,012,279 for its interest. The next day, Savkar told Khamisa that the offer was rejected because B of A needed "someone of substance" to stand behind the offer.
 
 
 11
 Khamisa asked Rose to contact B of A. Rose agreed to call the bank, but did not commit to standing behind the offer. On October 1, Rose called Savkar. During the conversation, either Rose offered to buy, or Savkar offered to sell, the B of A interest. On October 2, Rose orally offered to buy the B of A interest. This offer was not accepted.
 
 
 12
 The Monday meetings continued. On October 21, 1991, Rose advised Pearson to delay notifying the other limited partners regarding the options with B of A. On November 1, Khamisa, Pearson and Savkar met to discuss restructuring the hotel's offer. They discussed giving B of A equity participation if the hotel became profitable. Rose advised Pearson to reject this suggestion, and he did.
 
 
 13
 On November 12, 1991, Rose made a written offer to purchase the B of A deed of trust on his own behalf for approximately $3 million. The bankruptcy court found that Rose did not inform the joint venture of this offer until November 26.
 
 
 14
 After learning of Rose's offer, Pearson began soliciting other partners to replace Rose. Pearson attempted to form a new limited partnership to counter Rose's bid. Pearson testified at the bankruptcy court that he was attempting to raise $3.3 million in an effort to deal with B of A.
 
 
 15
 In February 1992, B of A sold the deed of trust to Rose for $3,020,000. At the time of the sale, the B of A note held a face value of approximately $11 million. Shortly after acquiring B of A's interest, Rose attempted to enforce the trust deed against the hotel for its face value. On February 25, 1992, the hotel filed for protection under Chapter 11 of the Bankruptcy Code.
 
 
 16
 On April 13, 1992, the hotel filed an adversary complaint against Rose, alleging breach of fiduciary duty and several other claims. The bankruptcy court found that Rose's access to confidential information through his participation in the hotel's management decisions rendered him a fiduciary, and that his use of the confidential information to purchase the B of A interest at a significant discount to the detriment of his partners and the joint venture's other creditors constituted a breach of his fiduciary duty.
 
 
 17
 Accordingly, the court ruled that the deed of trust purchased by Rose was enforceable only to the extent of the price paid by Rose ($3,020,000). The joint venture moved for attorney fees pursuant to the terms of the B of A note. The bankruptcy court granted the motion, and the fees were construed as a set off to the balance of the $3.02 million claim Rose held against the joint venture.
 
 
 18
 Rose appealed to the BAP. The panel upheld the bankruptcy court's decision to reduce the value of the note to the price paid, but in a separate decision reversed the award of attorney fees.
 
 
 19
 Rose appeals the BAP decision to affirm the court's finding that he breached a fiduciary duty. The joint venture appeals the BAP's decision to reverse the court's award of fees.
 
 II.
 
 20
 Decisions of the Bankruptcy Appellate Panel are reviewed de novo. In re Johnston, 21 F.3d 323, 326 (9th Cir.1994). This is so because both the BAP and this court apply the same standard of review to the underlying judgment of the bankruptcy court--its findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. Id.
 
 
 21
 Mixed questions of law and fact are reviewed by examining the facts underlying the determination for clear error, and reviewing de novo the legal conclusions. In re Pine Mountain, Ltd., 80 B.R. 171, 172 (Bankr. 9th Cir.Cal.1987).
 
 III.
 
 22
 Rose argues that the BAP erred in affirming the bankruptcy court's conclusion that Rose owed a fiduciary duty to the hotel. Generally, limited partners do not owe fiduciary duties:
 
 
 23
 While a limited partner normally would not be involved in the management or otherwise participate in the partnership so as to incur fiduciary obligations to other partners, we believe there can be factual scenarios where a limited partner might be involved in the partnership in such a manner--for example, allowing him access to confidential information--so as to create fiduciary duties.
 
 
 24
 Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg, 216 Cal.App.3d 1139, 1150, 265 Cal.Rptr. 330, 335 (1989) (citation omitted). The BAP affirmed the bankruptcy court's findings, reasoning that Rose received confidential information regarding the price at which B of A was willing to sell its interest. While the knowledge that B of A was willing to sell was more widely known, the BAP concluded that the extent to which B of A would discount its price was confidential.
 
 
 25
 Because Rose obtained this information through his participation in the financial meetings Pearson held, the BAP concluded that he entered into a fiduciary relationship with Pearson not shared by other limited partners. The BAP further adopted the bankruptcy court's view that a limited partner owing a fiduciary duty could be relieved of the duty not to usurp a partnership opportunity only after both full disclosure to, and consent from, the other partners.
 
 
 26
 We need not decide whether Rose's participation in the Monday meetings gave rise to a fiduciary duty to the joint venture. In order to recover for a violation of the fiduciary duty to refrain from usurping a corporate opportunity, we are persuaded that the entity to which the duty was owed must have the financial capability to capitalize on the opportunity.
 
 
 27
 In determining whether a firm had the means to avail itself of an opportunity, courts will look to see if the firm had a "tangible expectancy" in acquiring the opportunity. See In re Gordon Car & Truck Rental, 65 B.R. 371, 376 n. 1 (Bankr.N.D.N.Y.1986). To recover for usurpation of a corporate opportunity, a corporate entity must establish that it had an actual or expected interest in the opportunity, and that it had the financial ability to acquire the interest. Astarte, Inc. v. Pacific Indus. Systems, Inc., 865 F.Supp. 693, 707 (D.Colo.1994).
 
 
 28
 Even though a corporation might have had some rights with regard to the acquisition of property, in order for that opportunity to be usurped, the acquisition must have been within the corporation's expectation. Similarly, to establish an expectancy, it is not sufficient for plaintiff to show only that a proposed opportunity possesses value to it, but plaintiff must also show that there is a practical, not a mere theoretical, basis for the opportunity.
 
 
 29
 Id., (citations omitted).
 
 
 30
 The bankruptcy court found that "the hotel did not have the ability to pay the bank on its purchase offer if it were accepted." This finding is not clearly erroneous. See Johnston, 21 F.3d at 326. There was evidence that at the time of its December offers to B of A, Horton Grand Saddlery had only $25,000 in its investment account. Evidence also showed that in response to B of A's invitation to negotiate if Horton would deposit $2.3 million into escrow, Horton failed to make such a deposit. Finally, Horton's offers of September 29, 1991, December 16, 1991, December 27, 1991, and January 27, 1992, were rejected by B of A. Accordingly, Rose was not required to disclose his intentions regarding the acquisition of the B of A interest, or obtain consent for them, from the other partners. As no fiduciary duty was violated, this court concludes that the deed is fully enforceable by Rose.
 
 IV.
 
 31
 We reverse the BAP's decision to uphold the bankruptcy court's ruling that the first deed of trust was enforceable only to the extent of the price Rose paid for it. The deed is fully enforceable by Rose. Accordingly, we affirm the BAP's decision to reverse the bankruptcy court's decision to award attorney fees to the joint venture.
 
 
 
 [1]
 Honorable Ancer L. Haggerty, United States District Court for the District of Oregon, sitting by designation
 
 
 [2]
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3